CHARLES M. DREW, Appellant, v. COUNTY OF BOWMAN, NORTH DAKOTA and Sue V. McIntyre, the County Auditor of Said Bowman County, Respondents.

(235 N. W. 138.)

Opinion filed February 11, 1931.

*Theo. B. Torkelson* (*Drew & Cain* of counsel), for appellant.

*Mark H. Amundson* (*Iver Acker* on oral argument), for respondents.

McKenna, District Judge. This is an action in equity, in which the plaintiff seeks the following relief:

(a) A judgment of the court determining that the 1920, 1921 and

1922 taxes are not liens upon a quarter section of land in Bowman county, North Dakota.

(b) For a writ directing and compelling the county auditor to correct the records of his office to show that said taxes have been paid.

(c) For an injunction restraining the county auditor from taking any further proceedings to enforce the collection of said taxes by the issuance of a notice of expiration of redemption, or from issuing any deed based thereon.

The principal facts involved which are not in dispute are as follows:

On February 23, 1916, Emma P. Halvorson was the owner of the northeast quarter of section 18, township 131, range 103, Bowman county, North Dakota. On this date she and her husband executed a mortgage on the premises to the Interstate Securities Company for $850, which was duly recorded. On this same date she and her husband executed a commission mortgage to the Interstate Securities Company for $179.07, which was likewise recorded. This second mortgage was foreclosed on April 16, 1921, by advertisement, and the land was sold to the Interstate Securities Company for $120.13, and no redemption was made. The Interstate Securities Company assigned the first mortgage of $850 to the plaintiff, Charles M. Drew, on September 22, 1922, and on June 30, 1925, the plaintiff obtained a quit claim deed to the property from the Interstate Securities Company, and also obtained a quitclaim deed from Emma P. Halvorson and her husband on February 25, 1928, and these transactions constitute the source of plaintiff's title.

On December 10, 1918, the land was sold by Frank R. Huff, county auditor of Bowman county, North Dakota, at a public tax sale for delinquent real estate taxes for the year 1917. The land was struck off to one C. F. Clark, for the sum of $29.78, he being the highest and best bidder, and the county auditor issued to said C. F. Clark a tax sale certificate, No. 255. On December 13, 1918, T. E. Austin, who was then County Treasurer, issued a county treasurer's receipt to the said C. F. Clark for the 1917 taxes, in the sum of $29.78, which receipt was marked, "Sold For Taxes At Public Sale."

Thereafter the Western Securities Company paid the following taxes upon the premises as subsequent taxes: To Alex M. Norem,

county treasurer, on May 27, 1919, the 1918 taxes in the sum of $32.01; on July 14, 1920, the 1919 taxes in the sum of $53.78; to W. A. McIntyre, county treasurer, on November 7, 1921, the 1920 taxes in the sum of $61.42; on November 6, 1922, the 1921 taxes in the sum of $60.84; on October 23, 1923, the 1922 taxes in the sum of $59.44. While the record does not disclose accurately for whom the Western Securities Company paid the taxes subsequent, it is conceded by both parties that these were paid for the benefit of C. F. Clark, the tax certificate holder.

The county auditor during these years was one Anna M. Spire, and she duly entered upon the auditor's tax sale record for Bowman County the entry for each year's subsequent taxes as paid to accord with the above figures.

On June 7, 1923, the Gilbert Insurance Agency, Inc., at Willmar, Minnesota, wrote the county treasurer at Bowman, North Dakota, asking for a tax statement upon the premises, and on June 12, 1923, the Gilbert Insurance Agency sent the county treasurer of Bowman county a check for $167.34, in payment of the 1917, 1918 and 1919 taxes, and W. A. McIntyre, the then county treasurer, on June 14, 1923, issued to the Gilbert Insurance Agency, Inc., a redemption receipt, No. 2628, for $167.34, as redemption from all delinquent taxes for the years 1917, 1918 and 1919. The subsequent taxes for the years 1920 and 1921, which had been paid by the tax certificate holder, Clark, were overlooked, though the county auditor, Anna M. Spire, entered upon the auditor's tax sale record the payment of the $167.34 by the Gilbert Insurance Agency of date June 14, 1923, and indicated that this amount paid the 1917, 1918 and 1919 taxes. Thereafter, and on October 23, 1923, the tax certificate holder, Clark, paid the 1922 taxes upon the land, in the sum of $59.44.

Nothing further, apparently, was done in connection with these taxes until February 13, 1924, when Clark filed with Anna M. Spire, the county auditor of Bowman county, his certificate of tax sale, and asked for the issuance of a tax deed. So far as the records show, no immediate action was taken by the auditor, but on September 6, 1924, Anna M. Spire, county auditor, issued a notice of expiration of redemption, directed to Emma P. Halvorson; which notice recited that the land was sold on the 10th day of December, 1918, for the delinquent taxes

for the year 1917; that a certificate of sale was issued to the purchaser; that the real estate was sold for the sum of $29.78; that the time for redemption from such sale would expire 90 days after the service of the notice, and that the amount required to redeem was $423.32, and in addition the cost of the service and publication of the notice and such interest as might accrue; and that if redemption was not made within 90 days tax deed would issue. This notice, however, was not delivered to the sheriff of Bowman county for service until the sixteenth day of December, 1924. In the meantime, and on October 16, 1924, Anna M. Spire, the county auditor, wrote to the plaintiff, Charles M. Drew, at 610 New York Life Building, Minneapolis, a letter, which letter was as follows:

"Oct. 16, 1924.

"Chas. L. Drew,
"610 N. Y. Life Bldg.,
"Minneapolis, Minn.
"Dear Sir:                                    Re: NE¼ 28–131–103.
"The records show that you have an assignment of an equity in the above land and now the holder of the tax certificate has made immediate demand for tax deed on the same, he having paid the 1917, 1918, 1919, 1920, 1921 and 1922 taxes on the above land and the total amount required to redeem the same is now $415.31.
"The notice of execution will be delivered to the sheriff on Nov. 1st, which will entail an additional cost of about $30.00 for fees and advertising. We are therefore sending you this letter in order that you may redeem same if you are interested, without that additional cost.

"Yours very truly,
"AMS:K                                        County Auditor."

At the bottom of the letter was a detailed statement of each year's taxes, showing the method by which the auditor arrived at the amount due of $415.31. The plaintiff made no response to this letter, and apparently took no steps in connection therewith.

On December 23, 1924, D. J. Meyer, as sheriff of Bowman county, made his return of service upon the notice of expiration of redemption which had been furnished him by the auditor; which return

stated that he had made diligent search for Emma P. Halvorson, but she could not be found in his county, and that there was no person in the actual possession of the real estate; and that he served the notice upon Emma P. Halvorson, a nonresident, by sending a true copy of said notice by registered mail to her at Willmar, Minnesota, her last known postoffice address. There is nothing to show whether or not this notice was ever received by Emma P. Halvorson. The record does not disclose whether the auditor took any further steps for the service of said notice by publishing same, or did anything additional looking toward the issuance of a tax deed to the tax certificate holder, C. F. Clark.

However, on January 29, 1925, C. F. Clark, of Linn county, Iowa, assigned his tax sale certificate, which was then on file with the county auditor of Bowman county, to L. V. Skoglund, of Gascoyne, N. D., for a consideration of $428. On May 6, 1925, Anna M. Spire, as county auditor, delivered to L. V. Skoglund two county warrants, drawn upon the treasury of Bowman county, North Dakota. The first warrant, in the sum of $193.36, recites that it is "For Redemption of Certificate No. 225—1917–1918–1919 on NE 28–131–103." The second warrant was in the sum of $235.45, and recites: "For Redemption of Certificate No. — 1920–1921–1922 on NE 28–131–103." Both of these warrants recite that they are payable "Out of Funds in the Treasury paid in for said Redemption." Both of these warrants were paid by the county treasurer of Bowman county to L. V. Skoglund on May 14, 1925.

On May 6, 1925, the date of the issuance of the two warrants by the county auditor, she made the following notation in the auditor's tax sale record in reference to this land: "Settled with Skoglund in full 5–6–25 the 1920–21–22 still unpaid." She also at that time drew a line in ink through said tax sale record, striking out the payment of the subsequent taxes for the year 1920, in the sum of $61.42, for the year 1921, in the sum of $60.94, and for the year 1922, in the sum of $59.44.

No further steps appear to have been taken until the 25th day of January, 1929, when the then county auditor of Bowman county, one A. J. Spire, issued a notice of expiration of period of redemption directed to Emma P. Halvorson, which recites that she is the record

title owner of the real estate, and the notice is also directed to all mortgagees, lienholders, or other persons interested in said real estate, and to the person in possession thereof. The notice recites that the northeast quarter of section 28, township 131, range 103 was sold for delinquent taxes on the 13th day of December, 1921, and was sold to Bowman county; that no redemption has been made from said sale, and that unless redemption is made within 90 days a tax deed will be issued to the county. The notice further contains a statement of the taxes which must be paid in order to effect a redemption, as follows:

| For 1920, | $116.27 |
|-----------|---------|
| For 1921, | 107.38 |
| For 1922, | 97.78 |
| Total | $321.43 |

The return of Peder Paulson, sheriff of Bowman county, attached to this notice of expiration of redemption, recites that the notice came into his hands for service on the 26th day of January, 1929; that on the first day of February, 1929, he made diligent search and inquiry for Emma P. Halvorson, the person named in said notice, but that he was unable to find her in Bowman county, North Dakota, and that there was no one in actual possession of the premises. There is no further evidence of attempted service, either by publication or otherwise.

On April 3, 1929, the plaintiff commenced his present action by service of summons and complaint. The plaintiff also applied to the (board of) county commissioners (of Bowman county) for relief, asking to have the auditor's records corrected to show that the 1920, 1921 and 1922 taxes were not liens upon this land, but his application was refused. The plaintiff has not tendered payment of any taxes, but stands upon the record facts as above outlined.

The case was tried before Hon. F. T. Lembke, Judge, on May 14, 1929, and the court made findings of fact which are not seriously in dispute, and the following conclusions of law:

"1. That there was no redemption of the taxes on the above described land for the years 1920, 1921 and 1922 by the plaintiff or his grantors.

"2. That the defendants are entitled to judgment; that the com-

plaint of the plaintiff herein be dismissed, and that the defendants herein recover costs according to law.

"Dated November 28, 1929."

Judgment was duly entered upon said order, and the plaintiff appeals. The plaintiff claims that the lower court is in error, and that he should have judgment granting him the relief prayed for in his complaint, for the following reasons:

(a) That Bowman county received payment in full for all of the taxes assessed against the land in question for all of the years from 1917 to 1922, inclusive, and therefore can have no lien upon said premises for unpaid taxes.

(b) That the Gilbert Insurance Agency completed a legal redemption of the premises from the tax sale of December 10, 1918, for the 1917 taxes when it paid the taxes on the 14th day of June, 1923, and received a redemption receipt, and that a redemption having been made it cancelled the lien for all subsequent taxes outstanding at that time which were not in fact paid.

(c) That the county's attempt to issue a notice of expiration of period of redemption and to secure a tax deed to the premises is abortive and of no avail, because there was no tax sale of said premises on the 13th day of December, 1921, for the 1920 taxes; that there has never been any tax sale of said premises except the sale held in December, 1918, for the 1917 taxes, and these have been fully paid and redeemed, and therefore that the county should be enjoined and restrained from attempting any such procedure. In this connection we may say in passing that counsel for defendants has not suggested any theory to this court upon which Bowman county would have a right to issue a notice of expiration of redemption or upon which a tax deed could issue. As we understand his position, he insists that the plaintiff is in court seeking equitable relief, and therefore that before granting him equitable relief, the court should require the plaintiff to pay the taxes for 1920, 1921 and 1922, same not having been paid by the plaintiff or his grantors, and same still constituting a lien upon the land.

(d) The plaintiff further claims that the taxes having actually been paid to Bowman county as subsequent taxes by the holder of the tax sale certificate, and having been so entered as paid upon the tax rec-

ords of the county auditor of Bowman county, that the county auditor had no right to attempt to cancel the payment of such taxes by drawing a line through the same, and that this court should, in furtherance of justice and to protect plaintiff's rights, require the county auditor to show upon her books that said taxes have been in fact paid.

(e) The plaintiff further contends that the holder of the tax sale certificate, L. V. Skoglund, having accepted the redemption money in full from the county auditor of Bowman county, North Dakota, on May 6, 1925, and said county auditor having illegally, unlawfully and without any authority taken the funds of Bowman county to pay L. V. Skoglund for such redemption, and his tax sale certificate having been surrendered and cancelled, that this estops the defendants from claiming that a complete redemption was not made, and that it was immaterial whether the full amount which should have been paid by the Gilbert Insurance Agency in the first instance for redemption was or was not paid.

It appears to this court that the question which is of vital importance and which should be determined first of all, is as to whether or not the payment by the Gilbert Insurance Agency on June 14, 1923, of $167.34, for the taxes of 1917, 1918 and 1919, constituted a complete and valid redemption. If it did, then we think that all parties will concede that this would effectually operate to cancel all rights of the county of Bowman to the taxes for 1920, 1921 and 1922 as a specific lien upon this land.

Section 2197, Laws of North Dakota for 1913, controls the right and method of redemption from the sale of real estate for delinquent taxes. Those portions of the statute in which we are interested here are as follows:

"If at said sale any piece or parcel of land shall be sold to a purchaser, the same may be redeemed at any time within three years from the date of sale by any person or corporation having an interest therein who shall pay into the treasury of the county for the credit of the person thereto entitled, the amount paid by the purchaser at the time of sale, with a penalty of five per cent and interest thereon at the rate specified in such certificate of sale together with all amounts of subsequent taxes, penalties and interest paid by the holder of such certificate of sale up to the date of redemption with interest at the rate of

420

one per cent per month from the date of payment of such subsequent tax, which date of payment shall not be prior to the day upon which subsequent tax became delinquent. . . . The county auditor shall certify to the amount due upon such redemption, and on payment of the same to the county treasurer, he shall make duplicate receipts for the certified amount, describing the property redeemed, one of which shall be filed with the county auditor, which shall have the effect to annul the sale. If the amount so paid for the purpose of redemption be less than required by law it shall not invalidate such redemption, but the county auditor shall be liable for the deficiency to the person entitled thereto. . . ."

The defendants contend that these provisions of the statute must be strictly complied with by a redemptioner who attempts a redemption, and that the statute must be strictly construed against such redemption.

Conceding, but without deciding, that such contention is correct, we examine the evidence to ascertain what steps were taken to effect a redemption in the instant case. And in this connection it is claimed that no application was made to the county auditor in 1923 by the Gilbert Insurance Agency for a certificate of the amount due necessary for redemption, and that no certificate was actually issued by the county auditor, and therefore that payment of the sum of $167.34 only paid the taxes for 1917, 1918 and 1919, and did not constitute a complete redemption. After a careful examination of the entire record, we believe that a certificate was issued by the county auditor, and we base our conclusion upon the following facts: First, upon the testimony of W. A. McIntyre, at this time a clerk in the auditor's office of Bowman county and in 1923 the county treasurer of Bowman county. We quote the portion of his testimony which we deem important:

"Q. (By Mr. Torkelson) Now, can you state Mr. McIntyre by what authority you wrote this redemption receipt, Plaintiff's exhibit 1? (This refers to the redemption receipt issued by the county treasurer to the Gilbert Insurance Agency for $167.34, dated June 14, 1923).

"A. Well of course ordinary procedure would be that the party that wanted to take these taxes, the ordinary procedure would be—the only way they could get a statement of the amount is through the auditor's office, the treasurer does not figure delinquent taxes. Presumably we

had an auditor's statement of that amount—I have no recollection at this time. We have no way of telling except the statement from the auditor's office as to the amount it would take to redeem those several years' taxes. . . .

"By the Court: Q. You would necessarily have to have some authority from the auditor's office to go by before you wrote that receipt?

"A. It would be possible for the treasurer to figure those taxes but it is not done.

"Q. Your authority then was a statement of some kind from the office of the county auditor?

"A. Presumably.

"Q. What would be done with those statements from the auditor's office, that certificate of the amount required to redeem a certain piece of land?

"A. The regular procedure would be to stamp the amount on and put it on the auditor's spindle and it eventually goes over on to the auditor's tax record.

"Q. Those certificates or statements and certifications from the auditor's office as to the amount necessary to redeem certain pieces of land are not kept on file in the treasurer's office?

"A. No.

"Q. They are returned to the auditor's office?

"A. Yes, sir.

"*Cross examination by Mr. Amundson:*

"Q. Mr. McIntyre, you were the county treasurer of Bowman County on or about June 14th, 1923 when this tax redemption receipt was written?

"A. I believe so.

"Q. And you testified that the usual procedure was to get a statement from the auditor with reference to delinquent taxes?

"A. Yes, sir.

"Q. Could you swear in this case that that was the procedure used?

"A. I believe it was, but I could not swear to it.

"Q. You would not be willing to say that the statement of the taxes was obtained from the county auditor's office and payment made as in pursuance of that?

"A. No, I have no recollection of it and I cannot find the statement from the treasurer's office.

"Q. By the way, you are now acting as a clerk in the auditor's office, Mr. McIntyre?

"A. Yes, sir.

"Q. Have you made a search for such a statement?

"A. Yes, we did several different times but have been unable to find it.

"Q. You have not been able to find anything with reference to this tax redemption receipt?

"A. No, we have not.    .    .    .

"By the Court:   Q. Mr. McIntyre, this is a treasurer's receipt, is it not?

"A. Yes, sir.

"Q. When that receipt is issued does the treasurer check back to see whether or not he has issued the tax receipt personally to the purchaser of the land?

"A. No, we would not go back.

"Q. And if there would be any irregularity between the statement of the auditor and the taxes actually assessed and due you would not discover it?

"A. We would not likely discover it at that time.

"Q. No, I don't hardly think you would unless you checked it back?

"A. No, I don't think the taxes for years back would be checked off in the treasurer's office, we would probably write it up but not discover any difference at that time but it would be checked back later.    .    .    .

"Mr. Amundson:   Q. Being a clerk in the county auditor's office at this time what procedure does the auditor's office use in sending out these redemption receipts, do they keep copies?

"A. We keep a copy of the auditor's statement, that is the copy kept unless it would happen that one would be written without a carbon copy under it.

"Q. It is the usual practice to keep copies?

"A. Yes.

"Q. Can you tell from your examination of the records in the auditor's office whether or not that has been a custom for years back, back say to 1923?

"A. Oh yes, that has always been a custom as far as I know. . . .

"Q. And the only way that the auditor would be able to discover an error or anything like that would be when these receipts are turned back to the treasurer, or how would the auditor be able to check it?

"A. Of course when the taxes are transferred from the treasurer's office to the auditor's office that is supposed to be a complete record and it usually is.

"Q. But the treasurer has nothing to do with the collection of delinquent taxes except to take the money?

"A. That is all, on the auditor's statement. . . .

*"Re-Direct Examination by Mr. Torkelson.*

"Q. Mr. McIntyre, you would not accept money in redemption of delinquent taxes as county treasurer merely upon such a letter as plaintiff's exhibit #2, would you?

"A. No. . . .

"A. Of course this Gilbert Insurance Agency sent a letter and a check for $167.24 for three years taxes, of course without the statement we would not write that up at all. We would go into the auditor's office and find out if there was money enough. Of course I don't know if there was an auditor's statement with that letter or not but there presumably was or we would not have written that receipt, if there was not one we would go across the hall and get one.

"Q. When you speak of going across the hall you mean you would go to the auditor's office?

"A. Yes.

"Q. You obtained your figures from the auditor's office?

"A. That would be the regular proceeding and was usually done.

"Q. So in all probability you had authorization from the auditor's office to read (write) this particular receipt, plaintiff's Exhibit #1?

"A. I would say so, yes."

The court feels that this testimony of Mr. McIntyre shows quite conclusively that the county auditor must have certified to the amount necessary to make redemption in June 1923. But we think the conduct of Anna M. Spire, the county auditor at that time, in reference to this entire matter, is even more conclusive. She must have discovered shortly after June 14, 1923, that a mistake had been made

by permitting the Gilbert Insurance Agency to effect a redemption for the sum of $167.34, because she made a notation upon her tax sale record book about that time, and this record discloses that the 1920 and 1921 taxes had been paid as subsequent and had not been collected. She knew at that time that the county treasurer had issued a valid redemption receipt to the Gilbert Insurance Agency. She knew that a valid tax sale certificate was outstanding in the hands of C. F. Clark, and yet she does not take any steps to notify the Gilbert Insurance Agency or any one else of the mistake, nor attempt in any way to secure the payment of the 1920 and 1921 taxes. She does not pay this $167.34 to Mr. C. F. Clark. On the contrary, she conceals from Mr. Clark that such money has been paid in as redemption, because Mr. Clark, on October 23, 1923, pays the 1922 taxes, and she immediately makes note of that fact on the auditor's tax sale record. On February 13, 1924, she permits C. F. Clark to file his certificate of tax sale in her office, asking for a tax deed, without in any way, apparently, notifying him of the attempted redemption, and gives him no notice of the mistake. On September 6, 1924, she issues a notice of expiration of redemption, and yet on October 16, 1924, she writes to the plaintiff, Charles M. Drew, asking him to pay all of the taxes from 1917 to 1922, inclusive. In December, 1924, she delivers the notice of expiration of redemption to the sheriff for service, and the same is returned by the sheriff and filed in her office. C. F. Clark then assigns his certificate to L. V. Skoglund, and on May 6, 1925, she pays Mr. Skoglund in full the total amount due for redemption. Then she draws her pen through the entries on her tax record, attempting to reinstate the taxes for 1920, 1921 and 1922. All of these acts of the county auditor disclose a knowledge of the mistake. We think the circumstances tend conclusively to show that the county auditor, Anna M. Spire, did certify to the amount due for redemption in June, 1923; this in spite of the fact that counsel for the defendants call the court's attention to certain entries made in the auditor's tax redemption record as of June 6, 1923, and July 5, 1923, by A. J. Spire, showing the amount necessary to redeem as $306.48. There is no showing for whom these entries were made or to whom these figures were delivered, and certainly no proof that they were ever presented to the Gilbert Insurance Agency or any one acting in its behalf.

It having once been established as a fact that a county auditor issues to an attempting redemptioner a certificate as to the amount due upon such redemption, and the redemptioner acting upon such certificate pays the amount stated therein to the county treasurer, and receives the county treasurer's redemption receipt therefor, what is the legal effect as to the error of the county auditor in not certifying to the true amount, and what effect does the redemption have upon the subsequent taxes which have been paid by the tax certificate holder and which are not in fact paid by the redemptioner, due to the mistake of the county auditor?

A case directly in point is the case of **Forest v. Henry**, 33 Minn. 434, 23 N. W. 848.

"At the general tax sale in 1875 for delinquent taxes for 1874, the land was exposed for sale, and, there being no bidders, it was bid in for the state. In June, 1877, Smith, seeking to redeem from that tax sale, applied to the county auditor for a statement of the amount necessary to be paid to redeem. The auditor delivered to Smith a statement, signed by him officially, to the effect that upon payment of the taxes for the years 1874 and 1876, with the costs, penalties, and interest, the amount of all these items being stated, redemption would be made from all delinquent taxes and tax liens for those years. On the same day Smith paid the sum so indicated to the county treasurer for the purpose of making redemption, and received the treasurer's receipt. In fact there were then delinquent the taxes for the year 1875, which the county auditor by mistake failed to include in his statement. The omission was not observed by or known to Smith, who supposed that his payment covered all taxes and tax liens upon the property."

The Minnesota statute in reference to redemption in force at that time is practically identical with our § 2197, Laws of 1913. In deciding the question, the Minnesota court says:

"But it is said that this redemption was effectual only as to the taxes for 1874 and 1876, which only were referred to in the certificate, and that the tax for 1875 remained still unpaid, and a charge upon the land in favor of the state, when the proceedings were instituted under the act of 1881. We think, however, that the legal effect of the redemption was to discharge the claim of the state upon the land for the tax of 1875 as well as that for 1874 and 1876. Under the statute,

the claim of the state was an entire one, including inseparably the amount for which the land had been bid in, with all subsequent taxes. The law required the whole amount to be paid, and no act or omission of the auditor could make partial or incomplete a redemption which, by the law, was effectual and valid as such. The case is not different in this respect from what it would have been if there had been no taxes charged upon the land subsequent to the tax sale in 1875, but the auditor had allowed redemption by payment of a less sum than that for which the land had been bid in at that sale for the taxes of 1874. Such a redemption would be effectual under the statute above recited,—and, perhaps, without the statute,—and would completely discharge the claim of the state upon the land. The redemption would not be effectual merely *pro tanto,* allowing proceedings to be afterwards had against the land to enforce payment of the deficiency. So the redemption in this case had the same effect, as respects the land, that it would have had if the full amount which the state was entitled to receive had been paid."

This case has been consistently followed by the Minnesota court. See Knight v. Valentine, 34 Minn. 26, 24 N. W. 295; Croswell v. Benton, 54 Minn. 264, 55 N. W. 1125; State ex rel. National F. Ins. Co. v. Scott, 92 Minn. 210, 99 N. W. 799.

Another case directly in point is the case of Hintrager v. Mahoney, 78 Iowa, 537, 6 L.R.A. 50, 43 N. W. 522. In this case one D. A. Mahoney, the owner of the land involved, went to the county treasurer and asked the amount necessary to redeem. The treasurer examined the books and stated the amount, which was paid without question. Mahoney took no part in the examination of the books, and wholly relied on the information given him by the treasurer as to the amount to be paid. The amount necessary for redemption was $63.70, and the amount actually paid was $47.29. No question of fraud or deception was made against Mahoney. Within a month after redemption the treasurer notified Mahoney of the mistake, and requested him to make the additional payment, which he neglected to do. No effort was made to set aside or avoid the redemption; but the treasurer, because of the deficiency, treated the redemption as of no effect, and made the deed to the plaintiff, which was a tax deed. The opinion of the court

reads as follows (78 Iowa, 537, 6 L.R.A. 51, 43 N. W. pages 523, 524):

"A person desiring to redeem land from a sale for taxes must apply to the officer designated by law; the amount necessary for redemption must be determined from calculations based upon *data* from books or records of the office; and, of necessity, the question of amount must be determined by the officer. In this respect he must act, for the tax-sale purchaser and the redemptioner. The laws prescribing the forms and methods for redemption are enacted in the light of the existing facts that many persons applying to redeem are not competent to make the calculations, nor to ascertain from the records the *data* necessary therefor; and an attempt so to do would result in confusion and failure. Many who are competent to make the calculations with the proper *data* are unfamiliar with the records of the office; and an attempt to trace the records would be impracticable, and often a serious impediment to the business of the office. The case of Corn Town Co. v. Davis, 44 Iowa, 622, may be profitably consulted, on this branch of the case, as to duties of officers, and reliance thereon. Now, when a party entitled to redeem applies to the proper officer, and asks for the proper amount to redeem, and, upon information, pays it, and takes his certificate, and by mistake of the officer the amount is too small, is it a redemption?" . . .

"In the case of Bubb v. Tompkins, 47 Pa. 359, *by mistake of the officer, subsequent taxes paid by the purchaser were not included in the redemption.* This is the mistake that the appellant claims that the officer made in the case at bar. The court held that this was a complete redemption, and divested the lien, and that the deed which afterwards issued was void. The court said: 'We think this land was well redeemed. The owner came in the proper time to the proper officer, and offered to pay all charges that were against the land; and it was by mistake of the officer that he did not pay all. His redemption is not invalidated by the mistake of the public officer. It was very natural to trust him. Most people do so, and the law cannot declare such trust wrong. If the purchasers did not get all they are entitled to by the redemption, their remedy is against the treasurer.' The same question was again before that court in the case of Price v. Mott, 52 Pa. 315, and the case of Bubb v. Tompkins was cited and approved.

The case of Dietrick v. Mason, 57 Pa. 40, is also directly in point. In that case the officer also accepted a less sum than was necessary to redeem, and a deed issued, and it was held that the deed was void. The court said: 'But it seems that in making out the statement the treasurer by miscalculation made it $1.58 less than the true amount. It is argued that Dart and Fitch were bound to render the full amount, and that no duty lay upon the treasurer except to receive what might be offered him. This is not the law. The parties acting in the redemption are the owner and the officer. The owner must apply for the redemption, but the treasurer must furnish him with the means of making his tender. The treasurer is the legal custodian of the books, and the entries of the taxes and costs, containing the information necessary to know the same to be tendered. This information it is his duty to give, and he cannot even simply lay the books before the owner, and compel him to search them for himself. The knowledge of the latter may not be adequate to find what he needs. It is therefore the duty of the treasurer to state the taxes and costs to be paid, and, if he misstate the amount, his miscalculation or omission shall not defeat the redemption. The owner having called for the amount, and paid all demanded for the redemption, cannot be involved in the loss of his land by the mistake of the officer; but the treasurer must make good the deficiency to the purchaser. The same principles apply to taxes subsequent to the sale.' "

The Iowa court held the redemption valid, and also held that the notice given by the county treasurer subsequent to the redemption and the discovery of the mistake by the officer was not sufficient to avoid the certificate of redemption.

As holding the same views as the case just cited, see Squire v. McCarthy, 77 Neb. 431, 112 N. W. 327; Burchardt v. Scofield, 141 Iowa, 336, 133 Am. St. Rep. 173, 117 N. W. 1061; Bray & C. Land Co. v. Newman, 92 Wis. 271, 65 N. W. 494; Burch v. Nippress, 213 Mich. 185, 181 N. W. 987; O'Connor v. Gottschalk, 148 Mich. 450, 111 N. W. 1048; Tyler v. Burgeson, 229 Mich. 268, 201 N. W. 185.

A reading of these decisions leads to the following conclusions as to the effect of a redemption where the entire amount due at the time of the attempted redemption is not paid:

(1) The redemptioner must apply to the proper officer.

(2) The officer must give him a statement of the taxes due necessary to redeem.

(3) The statement thus received, though erroneous in fact, must be acted upon by the redemptioner in good faith; that is, he must rely upon the statement as being valid; he must have no guilty knowledge himself that there are other taxes unpaid which he should pay. If he knows that the officer is making a mistake, and attempts to take advantage of the mistake, then his act would be a fraud upon the official and the county.

(4) The redemptioner must pay the amount as shown by the statement, or the amount told him by the officer if no statement is in fact rendered.

(5) And the party attempting to redeem must not himself be guilty of any negligence, and must believe that he is paying all of the taxes due upon the land.

Applying these rules then to the case at bar, what was the position of the Gilbert Insurance Agency in June, 1923, at the time it attempted to make the redemption? There is no showing in the record for whom the Gilbert Insurance Agency was acting in attempting to redeem. Counsel for defendants takes it for granted that it was acting for Emma P. Halvorson, the owner of the land, but the facts do not warrant such a presumption. The record discloses that Emma P. Halvorson and her husband had no interest in the land at that time, for the reason that the Interstate Securities Company, the holder of the first and second mortgages, had foreclosed the second mortgage on April 16, 1921. The year of redemption had expired on April 16, 1922, and this was more than a year afterwards. Emma P. Halvorson and her husband were not living upon the land. The Gilbert Insurance Agency might have been acting for the Interstate Securities Company, it might have been acting for the plaintiff, Charles M. Drew, who had obtained an assignment of the first mortgage on September 22, 1922. We do not know. We only know that on June 7, 1923, the Gilbert Insurance Agency wrote the county treasurer at Bowman, North Dakota, the following letter.

"County Treasurer,

"Bowman, North Dakota.

"Dear Sir:—

"Will you kindly send us the tax statement on the following described land:

"NE¼ of Section 28, Township 131, Range 103.

"Enclosed you will find a stamped and self-addressed envelope for your reply.

"Thanking you in advance for the above information, we remain,

"Very truly yours,

"The Gilbert Insurance Agency, Inc.,

"R. Gerald Davis,

"Ass't Sec'y & Treas."

On June 12, 1923, the Gilbert Insurance Agency wrote to the county treasurer of Bowman county a second letter, as follows:

"County Treas., Bowman County,

"Bowman, North Dakota.

"Dear Sir:—

"Attached hereto you will find check in the amount of $167.34 in payment of the 1917, 1918, 1919 taxes on the NE¼ (North east quarter) of Section 28, Township 131, range 103.

"Will you kindly send a receipt for these taxes direct to this office in the enclosed stamped and self-addressed envelope and oblige

"Yours very truly,

"The Gilbert Insurance Agency, Inc.,

"L. E. Gilbert, President."

We are satisfied that between June 7, 1923, and June 12, 1923, a statement of the taxes necessary to redeem the NE¼ section 28, township 131, range 103 had been furnished to the Gilbert Insurance Agency; that that statement was furnished by the county auditor of Bowman county, North Dakota, and that the amount stated upon the statement necessary to make the redemption was the sum of $167.34, because there is no other source from which the Gilbert Insurance Agency could have received the information, and it must have had the correct amount or the county treasurer would not have issued the redemption receipt.

The only remaining question then is as to whether or not the Gil-

bert Insurance Agency acted in good faith. The defendants claim that the burden of proof is upon the plaintiff to establish that fact by a fair preponderance of the evidence. Conceding that to be the law, what is there in the record impugning the good faith of the Gilbert Insurance Agency? Here we have a corporation living in a neighboring state. It appears for some one. It desires to make redemption of land from delinquent tax sale. It writes a letter to the county treasurer of Bowman county asking for a statement. It receives the statement certified by the county auditor of that county, and acting upon that statement it sends the money and receives the redemption receipt. Not by any act of the treasurer or auditor of the county, or by any other person, is it ever brought home to the attention of the Gilbert Insurance Agency, or any one else for whom they were acting, that any mistake had been made. The county auditor makes no such disclosure, neither does the county treasurer, and the Gilbert Insurance Agency is allowed to remain in ignorance of the fact that any mistake was made, or that there were subsequent taxes paid by the tax certificate holder which it should have paid but did not. The law presumes that men act fairly and honestly and in good faith, until the contrary is shown. The Gilbert Insurance Agency acted in the way that business is ordinarily transacted, and it would seem that until its action is impeached in some way that the presumption follows that it acted in good faith; that it had no knowledge of any other taxes remaining unpaid; had no reason to suspect that the statement was not correct, and that it relied upon the same in good faith. Surely it should not be necessary for the plaintiff here to produce the officers of the Gilbert Insurance Agency who may have been in charge at that time, if they are still living, as witnesses before the trial court to have them disclose for whom they were acting and that they acted in good faith. If the testimony should disclose that they were acting for the Western Securities Company, would it be necessary to produce the officers of the Western Securities Company who had charge of the matter at that time, if they are still living, and have them testify as to their good faith? It does not seem so. It would seem that when the plaintiff has made a prima facie showing, that that should suffice, until such showing has been impeached in some way by the defendants.

It is therefore our view that the redemption of June 14, 1923, was

a lawful, ⋅ ılid and complete redemption; that it had the effect of paying all o⋅ ⋅ the taxes then due upon the land; that no lien for any specific t⋅ ⋅es remained; that the right of the tax sale certificate holder was against the county auditor for the mistake which the county auditor made; and that the redemption had the effect of annulling the sale of December 10, 1918. It necessarily follows that Bowman county has no lien for taxes upon the premises; that the county auditor should be restrained from attempting to cloud the plaintiff's title by issuing notice of expiration of redemption or a tax deed; that the books of the county auditor having been changed by the county auditor, and without any legal authority, that said books should be corrected to show that the subsequent taxes for 1920, 1921 and 1922 were in fact paid and no longer a lien upon the property.

The judgment of the lower court is accordingly reversed.

NUESSLE, BIRDZELL, BURR, and BURKE, JJ., concur.

Mr. Chief Justice CHRISTIANSON, did not participate; Honorable Geo. M. McKenna, Judge of the Third Judicial District, sitting in ⋅ his stead.