2001 ND 149

**Maria L. HIGGINS, Petitioner and Appellant**

v.

**Paul E. TRAUGER, County Auditor of Morton County, Respondent and Appellee.**

**Steve Thilmony and, Garry Strandemo, Plaintiffs and Appellees**

v.

**William Higgins; Sanitary Plumbing and Heating; Dakota Northwestern Bank, National Association, n/k/a Norwest Bank Bismarck, National Association; United Accounts, Inc.; B & D Supply, Inc. and all other persons unknown claiming any estate or interest in or Lien or encumbrance upon the property described in the Complaint, Defendants.**

**Nos. 20010073, 20010074.**

Supreme Court of North Dakota.

Aug. 29, 2001.

Susan Schmidt (argued) and William C. Severin (on brief), Severin, Ringsak & Morrow, Bismarck, for petitioner and appellant Maria L. Higgins.

Charles S. Miller, Jr., Fleck, Mather & Strutz, Bismarck, for respondent and appellee Paul E. Trauger.

James P. Rausch, Rausch Law Office, Bismarck, for plaintiffs and appellees Steve Thilmony and Garry Strandemo.

MARING, Justice.

[¶ 1]  Maria L. Higgins appealed from a summary judgment quieting title to disputed Morton County property in Steve Thilmony and Gary Strandemo, and dismissing Higgins's petition for a writ of mandamus directing Morton County Auditor Paul E. Trauger to issue tax deeds for the property to her.  We conclude the parties' reliance on the auditor's error in calculating the date the 90 day period of redemption would expire did not extend the statutory period an additional day to validate an untimely attempt to redeem the property.  We further conclude, however, that a genuine issue of material fact exists whether Higgins purchased tax sale certificates on behalf of, or in collusion with, her husband, William Higgins, so that the purchase should be treated as a redemption made by William Higgins under former N.D.C.C. § 57–24–18.  We reverse the summary judgment and remand for further proceedings.

I

[¶ 2]  This case involves a dispute over Morton County land located on the north side of the "strip" between Bismarck and

Mandan. The parties have stipulated to some facts. Morton County acquired the disputed property through involuntary tax forfeiture proceedings, and in October 1989, the County conveyed the property to William Higgins and Harry Reynolds. Although Reynolds resided on the property, William Higgins paid most of the property taxes from 1989 until 1994.

[¶ 3] The taxes became delinquent beginning in 1994, and a lis pendens was filed against the property in May 1995, giving notice of a partition action brought by William Higgins against Reynolds. The result of this lawsuit does not appear in the record. For tax years 1994 through 1997, the property was sold to the auditor in the manner provided by law for delinquent taxes. According to the auditor, William and his wife, Maria Higgins, came to his office with a Mandan attorney "to check on the procedures for obtaining title following a tax sale" and to determine "whether there was a way they could acquire the property free and clear of any interest of Harry Reynolds." On February 19, 1998, Maria Higgins paid the Morton County Treasurer $8,135.23 for the 1994 through 1997 tax sale certificates, and those certificates were assigned to her.

[¶ 4] Reynolds was served with a notice of expiration of period of redemption on December 22, 1999. The notice informed him that tax sale certificates for 1994 and 1995 had been issued to Maria Higgins, and unless redemption was made within 90 days after service of the notice, she would be issued tax deeds to the property. The auditor also sent notices to William Higgins and Norwest Bank, a lienholder with a potential interest that still appeared of record.[1] The 90 day period of redemption would expire on March 21, 2000, but the auditor miscalculated and incorrectly orally advised the parties on several occasions that March 22, 2000, would be the last day to redeem.

[¶ 5] On March 22, 2000, Reynolds, with the assistance of Thilmony and Strandemo, paid the amount required to redeem to the treasurer and received a redemption receipt. Reynolds then quitclaimed his interest in the property to Thilmony and Strandemo. After March 23, 2000, Maria Higgins asked the auditor to issue her deeds to the property because Reynolds did not timely redeem. The auditor refused.

[¶ 6] Maria Higgins sued the auditor, seeking a writ of mandamus compelling him to issue her tax deeds to the property. Thilmony and Strandemo sued William Higgins and others to quiet title to the same property. The trial court consolidated the cases, and all of the parties, except the auditor, entered into a stipulation of facts and moved for summary judgment. Maria Higgins argued she is the owner of the property because it was not redeemed by March 21, 2000. The auditor, Thilmony and Strandemo argued the redemption should be upheld on equitable grounds and, in the alternative, that Maria Higgins is not entitled to a tax deed because her purchase of the tax sale certificates should be treated as a redemption by William Higgins under former N.D.C.C. § 57–24–18.

[¶ 7] The trial court ruled that, although Trauger had miscalculated the final date to redeem, the erroneous redemption date "was communicated to all of the parties," and should be binding to extend the

---

1. On January 28, 2000, the auditor also sent a notice of expiration of period of redemption to Sanitary Plumbing and Heating based on an unreleased lien in the records. The parties concede this mechanic's lien had expired as a matter of law before the notices were sent and Sanitary Plumbing and Heating had no right of redemption.

statutory redemption period. The court reasoned:

> Redemption laws are generally construed in a manner favorable to the owner of property, subject to delinquent taxes, rather than to the holder of a tax sale certificate. This Court believes that the principles of equity discussed at 72 Am.Jur.2d[ ] *State and Local Taxation*[ ] §[§ ] 941, 1027, as well as *Robinson v. District of Columbia*[,] 372 A[.]2d 1005 ( [D.C.]Ct.App.1977), cited by counsel for the Auditor, mitigate in favor of Mr. Reynolds. He had a right to rely on the representations being made by the County Auditor, and should not lose his interest in the property because he abided by the information provided to him, albeit waiting until the last possible day. Likewise, Maria Higgins cannot now complain, inasmuch as she was advised accordingly and was seemingly operating on the same assumption and belief as Mr. Reynolds and his successors.

[¶ 8] The trial court quieted title to the property in Thilmony and Strandemo, and dismissed Maria Higgins's petition for a writ of mandamus. Maria Higgins appealed.

## II

[¶ 9] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly disposing of a lawsuit without trial if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Overboe v. Farm Credit Serv.*, 2001 ND 58, ¶ 5, 623 N.W.2d 372. A party seeking summary judgment has the burden of clearly demonstrating there is no genuine issue of material fact. *Egeland v. Continental Res., Inc.*, 2000 ND 169, ¶ 8, 616 N.W.2d 861.

### A

[¶ 10] Maria Higgins argues the auditor should be required to issue tax deeds to her because the property was not redeemed within 90 days from the date of service.

[¶ 11] Under the former statutory scheme,[2] the sale of land for delinquent taxes and redemptions from real estate tax sales were governed by N.D.C.C. chs. 57–24, 57–26, and 57–27. *See Peplinski v. County of Richland*, 2000 ND 156, ¶¶ 6–8, 615 N.W.2d 546, and *Van Raden Homes, Inc. v. Dakota View Estates*, 546 N.W.2d 843, 845–46 (N.D.1996), for general discussions of the process. The dispute in this case focuses on the redemption procedure.

[¶ 12] Maria Higgins acquired the tax sale certificates on February 19, 1998, and presented the certificates for 1994 and 1995 to the auditor for service of notice of expiration of the period of redemption in accordance with N.D.C.C. § 57–27–02(1). Under N.D.C.C. § 57–27–02(1)(f), the notice must be directed to the persons in whose name the property described in the certificate is assessed, to all lienholders of record and mortgagees or assignees of mortgages holding unsatisfied recorded mortgages, and must include "[t]he time when the redemption period will expire." Tax sale certificates may be redeemed "at any time on or prior to the date on which the period of redemption expires, and within ninety days after notice of the expiration of such period is given as required

---

**2.** In 1999, the Legislature changed the statutory scheme for delinquent real estate taxes effective for taxable years after December 31, 1998. *See* 1999 N.D. Sess. Laws ch. 503. Consequently, this case is governed by the law in effect before the 1999 amendments. *See Peplinski v. County of Richland*, 2000 ND 156, ¶ 2 n. 1, 615 N.W.2d 546.

by law." N.D.C.C. § 57–26–01. The notice of expiration of the period of redemption must be served personally upon any person actually residing on the property covered by a tax sale certificate. *See* N.D.C.C. § 57–27–02(4). Reynolds was served with a notice of expiration of period of redemption on December 22, 1999, informing him "unless redemption is made from each of said tax sale certificates ninety (90) days after the date of service, tax deeds will be issued to Maria L. Higgins, . . ."

[¶ 13] This Court has said "[s]tatutes relating to the redemption of property from tax sales are liberally construed in favor of the parties entitled to redeem," *Lower Yellowstone Irrigation Dist. No. 2 v. Tollefson*, 68 N.D. 39, 43, 276 N.W. 254, 256 (1937), and "tax titles can be acquired only after full compliance with all the provisions of law intended for the protection of those having the right to redeem." *State ex rel. State Bank v. Weiler*, 67 N.D. 593, 601, 275 N.W. 67, 70 (1937). The statute requiring notice of the expiration of the period of redemption must be strictly complied with to terminate the owner's right to redeem. *Wittrock v. Weisz*, 73 N.W.2d 355, 358 (N.D.1955). If a valid notice of expiration of period of redemption has been issued and served in accordance with the statutes, and no redemption is made within the time prescribed by the statute and the notice, the right of redemption terminates and title passes to the owner of the tax sale certificate. *See Knowlton v. Coye*, 76 N.D. 478, 488, 37 N.W.2d 343, 350 (1949); N.D.C.C. § 57–27–05. Thus, while a notice that incorrectly states a shorter time than the law allows for redemption is fatally defective, *see Eikevik v. Lee*, 73 N.D. 197, 204, 13 N.W.2d 94, 97 (1944), a statement in the notice that the time for redemption will expire 90 days from service of the notice fully complies with the statutory requirements. *See DeNault v. Hoerr*, 66 N.D. 82, 95, 262 N.W. 361, 366 (1935).

[¶ 14] In this case, the notice of expiration of the period of redemption correctly informed Reynolds he had 90 days from the date of service to redeem the property. Although Reynolds was served on December 22, 1999, the auditor, rather than counting the days from December 22, counted the days from December 23, resulting in the 90th day being March 22, 2000, rather than the correct date of March 21, 2000. Because the auditor had orally informed all of the parties that the incorrect date of March 22, 2000, was the last day to redeem, the trial court upheld the redemption made by Reynolds based on "principles of equity."

[¶ 15] Equitable relief may be available to a person seeking to redeem who has been misled by the public official responsible for handling the redemption. *See* Annot., *Effect of certificate, statement (or refusal thereof), or error by tax collector or other public officer regarding unpaid taxes or assessments against specific property*, 21 A.L.R.2d 1273 (1952), and cases collected therein. The general rule is "[w]hen failure to comply with the requirements of the redemption statute is due to the fault or mistake of the public officer whose duty it is to furnish the taxpayer with requisite information, and upon whose advice or direction the tax redemptioner has relied in good faith and without negligence on his own part, his rights will not be cut off." 72 Am.Jur.2d *State and Local Taxation* § 1027, at 299–300 (1974) (footnote omitted). *See also* 85 C.J.S. *Taxation* § 1353 (2001). The mistake or inadvertence on the part of the public officer cannot be a "conscious departure from the law on his part," and the public officer has no authority "to affect the purchaser at the tax sale or the pur-

chaser of tax certificates by a deliberate disregard of redemption requirements known both to the officer and the owner, or to indicate that the officer can waive compliance by the tax redemptioner with the statutory requirements governing the right of redemption." 72 Am.Jur.2d *State and Local Taxation* § 1027, at 300 (footnote omitted).

[¶ 16]   This Court applied these general principles in *Drew v. Bowman County*, 60 N.D. 410, 235 N.W. 138 (1931), where the redemptioner did not pay the entire amount due to redeem because the county auditor made a mistake in computing the amount required.   In holding the attempted redemption valid, the Court was careful to set forth stringent rules for determining whether an auditor's error will render valid an otherwise invalid attempt to redeem:

(1) The redemptioner must apply to the proper officer.

(2) The officer must give him a statement of the taxes due necessary to redeem.

(3) The statement thus received, though erroneous in fact, must be acted upon by the redemptioner in good faith; that is, he must rely upon the statement as being valid; he must have no guilty knowledge himself that there are other taxes unpaid which he should pay.   If he knows that the officer is making a mistake, and attempts to take advantage of the mistake, then his act would be a fraud upon the official and the county.

(4) The redemptioner must pay the amount as shown by the statement, or the amount told him by the officer if no statement is in fact rendered.

(5) And the party attempting to redeem must not himself be guilty of any negligence, and must believe that he is paying all of the taxes due upon the land.

*Drew*, 60 N.D. at 428–29, 235 N.W. at 146. The *Drew* court made clear that the redemption statutes may not be freely amended by an auditor's mistake, and that the person attempting to redeem must have no guilty knowledge of the error and must not be guilty of any negligence in failing to recognize the error.

[¶ 17]   These principles also apply when a potential redemptioner fails to redeem within the required time:

While a public officer authorized to receive money in redemption from tax sales cannot waive or excuse a failure to redeem within the time prescribed by law, a failure to redeem within the time limited by statute due to dereliction of duty on the part of tax officers is ordinarily excused, at least where the failure is not due to any unjustified negligence on the taxpayer's part but arises because of his reliance in good faith upon the information supplied by the officer....

While it is not negligence for a taxpayer to rely upon the information given him by the officer, and to fail to make personal examinations of the records, the certificate of redemption, etc., it has been held in some cases that where the taxpayer has knowledge from other sources that his property has been sold for taxes, or where he fails to make particular inquiry as to tax sales, he is not entitled to rely upon the information given him by the officer, and that his time to redeem is not extended by reason thereof.

72 Am.Jur.2d *State and Local Taxation* § 1030, at 302 (footnotes omitted).   *See also Security State Bank v. Kramer*, 51 N.D. 20, 31–32, 198 N.W. 679, 682 (1924) (holding a court "has power to grant relief in cases where the owner of the equity of redemption has been prevented from exercising his right to redeem within the statu-

tory period by the fraud of one who, as a result of the failure to redeem, obtains title to the premises.") Courts have accordingly held, when a failure to timely redeem is attributable in part to the neglect of the redemptioner, and not wholly to the mistake of the public official, the attempted redemption will not be upheld. *See, e.g., Kitchens v. Machen,* 210 Ark. 1046, 198 S.W.2d 833, 834–35 (1947); *Application of County Collector,* 184 Ill.App.3d 1048, 133 Ill.Dec. 211, 540 N.E.2d 1077, 1080 (1989); *Easton v. Doolittle,* 100 Iowa 374, 69 N.W. 672, 673 (Iowa 1896); *Davies v. Rayburn,* 51 N.M. 309, 183 P.2d 615, 616 (1947); *Menasha Wooden Ware Co. v. Harmon,* 128 Wis. 177, 107 N.W. 299, 300 (1906).

[¶ 18] In this case, the auditor's notice of expiration of period of redemption correctly informed Reynolds he had 90 days from the date of service to redeem. This was all the law required the auditor to do. The law did not require that the auditor state a specific date when the redemption period would expire. *See DeNault,* 66 N.D. at 95, 262 N.W. at 366. Therefore, this is not a case in which the auditor gave a potential redemptioner incorrect information available only from the auditor's internal records. Rather, Reynolds had the means to compute 90 days from the date of service, and having been personally served on December 22, 1999, Reynolds was in as good a position as anyone to do so. The auditor's erroneous computation of the final date to redeem, which he subsequently and gratuitously communicated to the parties, is the type of mistake that could have been recognized by Reynolds or the other parties. The error amounts to an improper extension by the auditor of the statutory period for redemption. The trial court's reliance on *Robinson v. District of Columbia,* 372 A.2d 1005, 1007 n. 1 (D.C.Ct.App.1977), is unpersuasive. The *Robinson* trial court's ruling that a property owner could redeem because an official knowingly "extended" her redemption period was not an issue in the appellate court. *Id.* Moreover, because the unchallenged *Robinson* trial court ruling conflicts with settled principles, we decline to adopt it.

[¶ 19] If Reynolds made his own calculations and knew the auditor was mistaken, Reynolds's guilty knowledge entitles him to no relief. If Reynolds did not make the effort to calculate the last day to redeem and discover the auditor's error, the failure to timely redeem is partly attributable to Reynolds's own neglect or inadvertence. In either instance, we conclude equitable principles do not apply to extend the period of redemption in this case. The redemption period expired on March 21, 2000, and Reynolds's belated attempt to redeem on March 22 was too late as a matter of law.[3]

## B

[¶ 20] The auditor, Thilmony and Strandemo argue the attempted redemption in this case should nevertheless be upheld because the purchase of the tax

---

**3.** Relying on *Werner v. Werner,* 74 N.D. 565, 570, 23 N.W.2d 757, 758 (1946), for the proposition the period of redemption does not run until it expires for all persons entitled to redeem, the auditor argues the redemption in this case should be upheld as timely based on the notice of expiration of period of redemption belatedly sent to Sanitary Plumbing and Heating. Under the auditor's calculations, the last day for anyone to redeem was actually April 27, 2000. We reject this argument. Not only did Sanitary Plumbing and Heating have no right of redemption, but there is no evidence any of the parties relied on this improper notice to extend the deadline past March 21, 2000. Indeed, according to the stipulation of facts, the auditor had informed the parties March 22, 2000, was the final day to redeem.

sale certificates by Maria Higgins must be treated as a purchase, and in effect a redemption, by her husband, William Higgins, who was also an owner of the disputed property.

■■■ [¶ 21] Former N.D.C.C. § 57–24–18 provided:

> If the owner of any tract or parcel of land purchases such land at a tax sale, the sale has the effect of passing to him, subject to redemption, and free from any lien or encumbrance thereon or claim thereto, every right, title, and interest of every person, *except such right, title, interest, lien, or encumbrance as the owner purchasing may be bound either legally or equitably to protect against such sale, including the taxes for which such sale was made.*

(Emphasis added). This statute recognizes the general rule that "one who owes a duty to pay taxes on property cannot, by omitting to do so, purchase at a sale of the property for the nonpayment, and thereby strengthen his title." *Baird v. Fischer*, 57 N.D. 167, 171, 220 N.W. 892, 893–94 (1928). *See also Matter of Estate of Hansen*, 458 N.W.2d 264, 271 (N.D.1990); *Hefty v. Aldrich*, 220 N.W.2d 840, 845 (N.D.1974); *Northwestern Mut. Sav. and Loan Ass'n v. Hanson*, 72 N.D. 629, 633–35, 10 N.W.2d 599, 601–02 (1943); *Hart v. Hone*, 57 N.D. 590, 597, 223 N.W. 346, 349 (1928); *Finlayson v. Peterson*, 11 N.D. 45, 53, 89 N.W. 855, 859 (1902). When a person purchases a tax sale certificate under these circumstances, the purchase is essentially given the effect of a redemption:

> It is a general principle of law that one who by virtue of an existing legal or contractual relation with another is under an obligation to such other person to pay the taxes on lands, but who omits to pay such taxes, cannot be allowed to strengthen his title to such land by buying in the tax title when the property is sold as a consequence of his omission to pay the taxes on it; his purchase at the sale will merely operate as a payment of the taxes, and the title will be the same as it was before the sale, except that the lien for taxes is discharged. This rule includes those whose duty it is to pay the taxes or who have such an interest in the property that they might redeem the same from tax sale and save themselves from loss and injury, . . .

> Moreover, the effect of the principle which precludes one under obligation to pay taxes from becoming the purchaser at a sale for delinquency in payment of taxes cannot be evaded by such person by allowing the property to be sold to a third person and then purchasing it from him, by organizing a corporation and causing the tax deed to be made to it, or by any other collusive arrangement which would directly or indirectly defeat the operation of the rule.

72 Am.Jur.2d *State and Local Taxation* § 941, at 234–35 (1974) (footnotes omitted). *See also* 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 81 (1995); Annot., *Right of mortgagee or other lienor to acquire and hold tax title in his own right as against persons owning other interests in or liens upon property*, 140 A.L.R. 294 (1942); Annot., *Right of holder of bond or other instrument representing or based upon assessment for benefits or improvement, to purchase at tax sale, or acquire tax title and hold same in his own right as against owner of land*, 123 A.L.R. 398 (1939); Annot., *Deed from purchaser of tax title to former owner or lienor as a conveyance of a new title or a redemption, as regards rights or liens of third persons subordinate to tax lien*, 106 A.L.R. 887 (1937). *Compare Hart*, 57 N.D. at 596–97, 223 N.W. at 349 (rejecting argument plaintiff acquired title for benefit of mortgagor bank to strengthen its title because plain-

tiff did not obtain title at a tax sale or through assignment of tax sale certificate).

[¶ 22] We reject the argument that, as a matter of law, Maria Higgins's purchase of the tax sale certificates should be treated as a purchase by William Higgins merely because they are married. Although there is a line of authority supporting this proposition, *see, e.g., Brown v. Warner,* 78 S.D. 647, 107 N.W.2d 1, 3 (1961), and cases cited therein, we decline to adopt it. This outdated position conflicts with our laws recognizing that spouses have the same capacity and rights with respect to property and contracts they had before marriage, *see, e.g.,* N.D.C.C. §§ 14–07–04, 14–07–05, 14–07–06, 14–07–08, and the public policy to preserve the separate legal existence of spouses with respect to their persons and property. *See RLI Ins. Co. v. Heling,* 520 N.W.2d 849, 851 (N.D. 1994); *Fitzmaurice v. Fitzmaurice,* 62 N.D. 191, 200, 242 N.W. 526, 529 (1932). Rather, we believe a family relationship, in itself, is unimportant, except to the extent it may be considered evidence tending to prove a collusive arrangement. *See, e.g., Crane v. Taylor,* 261 P.2d 587, 589 (Okla. 1953). Collusion is "[a]n agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." *Black's Law Dictionary* 264 (6th ed.1990).

[¶ 23] Here, the auditor stated in an affidavit that William and Maria Higgins always visited his office together, and that:

> Shortly before Maria Higgins purchased the tax sale certificates, William and Maria Higgins came to my office with Mandan attorney Bruce Bair to check on the procedures for obtaining title following a tax sale. *Their interest was whether there was a way they could acquire the property free and clear of any interest of Harry Reynolds. Based on these conversations, I was under the impression they decided to have Maria Higgins purchase the tax sale certificate in her name to try [sic] avoid any prohibition of William Higgins acquiring the tax sale certificates.*

(Emphasis added).

[¶ 24] We conclude the auditor's affidavit raises a genuine issue of material fact whether Maria and William Higgins entered into a collusive arrangement to avoid the prohibitions in N.D.C.C. § 57–24–18. If they did so, Maria Higgins's purchase of the tax sale certificates should be treated as a purchase, or redemption, by William Higgins, and William Higgins and Reynolds should be restored to their prior status as co-owners of the disputed property. If they did not enter into a collusive arrangement, a writ of mandamus should issue compelling Trauger, the Morton County Auditor, to issue Maria Higgins the tax deeds to the property.

### III

[¶ 25] The factual dispute precludes disposal of the case by summary judgment. We reverse and remand for further proceedings.

[¶ 26] VANDE WALLE, C.J., and NEUMANN, SANDSTROM, and KAPSNER, JJ., concur.