FIRST CONGREGATIONAL CHURCH OF CEDAR RAPIDS, HOME
FOR AGED WOMEN OF CEDAR RAPIDS, and HOME FOR
THE FRIENDLESS OF CEDAR RAPIDS, Appellants, v. J.
M. TERRY and WILLIAM PARK, Defendants, and EL-
SIE J. HALE, ROY HALE, BLANCHE HALE and MAUD
HALE, Interveners, Appellees.

Life estate: ACQUISITION OF TAX TITLE BY LIFE TENANT: FRAUD: EVI-
1   DENCE.   A life tenant is charged with the duty of paying taxes
on the property, and cannot by collusively permitting the same
to be sold for taxes, thereby acquire the title for his own bene-
fit, either directly or in the name of a member of his family, to
the exclusion of the remaindermen.   Evidence held to show
a collusive sale for the benefit of life tenant.

Same.   The wife of a tenant occupying the property with her hus-
2   band as a homestead, cannot acquire a valid tax title as
against him or the remaindermen, even though no fraud or
collusion is shown.

*Appeal from Linn District Court.*— HON. J. H. PRESTON,
Judge.

THURSDAY, MAY 10, 1906.

ACTION in equity to set aside tax deed.   Decree for the
interveners, and the plaintiff, First Congregational Church

of Cedar Rapids, appeals.   Other material facts are stated in the opinion.— *Reversed* and *remanded*.

*Clark & Clark,* for appellant.

*Redmond & Stewart,* for appellees.

Weaver, J.— Without attempting to rehearse the pleadings we may state the nature of the controversy as follows:   In the year 1895 one Ellen S. Hale died testate, seised of a five-acre tract of land of the value of $1,500, in Linn county.   By her will, which was duly probated, she devised a life estate in said land to her brother, Edward J. Hale, with remainder over in equal shares to the First Congregational Church, the Home for Aged Women, and the Home for the Friendless, all of Cedar Rapids, Iowa.   The devisee, Edward J. Hale, took possession of said property and, with his family, consisting of his wife, Elsie J. Hale, and children, who are interveners herein, occupied it as a homestead until his death, July 11, 1903.   Said devisee failed to pay the taxes on the property for the year 1896, and for these taxes the property was sold by the county treasurer on December 6, 1897, to the defendant J. M. Terry. No redemption having been made from said sale the treasurer executed and delivered to Terry a deed of said property under date of July 19, 1901.   On August 27, 1901, in consideration of a sum substantially equal to the redemption value of the tax purchase, Terry conveyed the land to the defendant William Park, who on the same day conveyed it for a similar expressed consideration to Elsie J. Hale, wife of Edward J. Hale, and to her children, who were all infants.   This, it will be observed, was two years before the death of the life tenant and while he and the family were occupying the premises as their homestead.   It should also be said that Terry was an old and intimate friend of Edward J. Hale, and that Park is the father of Elsie

J. Hale, wife of Edward.  Plaintiffs seek to set aside the title on the ground:  First, that the procuring of the tax deed and the conveyance to the wife and children of Hale was accomplished by a fraudulent combination or conspiracy between Hale, Terry, and Park, to enable the said life tenant whose duty it was to pay the taxes to defeat and destroy the interest of the remaindermen in the property; second, that the wife and members of Hale's family residing with him on said homestead had an interest therein which would entitle them to redeem such property from tax sale, and they could not acquire a tax title thereto as against the head of the family; and that the taking of such title through Terry and Park operates in equity as a redemption from the sale for the benefit of the remaindermen; and, third, that no legal notice of the expiration of the period of redemption had ever been served as provided by law preliminary to the execution of the tax deed.

The rule that the life tenant of lands is charged with the duty of paying the taxes which accrue upon the property of which he is enjoying the use, rents, and profits, is elementary.  *Olleman v. Kelgore,* 52 Iowa, 38; *Booth v. Booth,* 114 Iowa, 78; *Defreese v. Lake,* 109 Mich. 415 (67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584); *Trust Co. v. Mintzer,* 65 Minn. 124 (67 N. W. 657, 32 L. R. A. 756, 60 Am. St. Rep. 444).  It is equally well settled that with this duty resting upon him he cannot cut out or destroy the estate of the remaindermen in the property by permitting it to be sold for taxes and taking to himself the title thus accruing.  Cooley on Taxation (2d Ed.) 467.  *Crawford v. Meis,* 123 Iowa, 610.  This being true, it is immaterial whether he takes the tax title direct or by conveyance from some third person who has acquired it.  In neither case can he assert such title against the owners of the remainder, and his purchase will be held to operate as a mere redemption from the tax sale or payment of the taxes for which he

*1. LIFE ESTATE: acquisition of tax title by life tenant: fraud: evidence.*

was legally liable. Such would also be the necessary effect of a tax title taken by his procurement or for his use and benefit in the name of some other person. These general principles we do not understand counsel for appellee to question, but it is argued that the facts shown do not call for their application. In that view we cannot concur. Collusive and fraudulent agreements are not often made in the presence of persons other than those participating in the fraud. In the nature of things they are difficult to prove by direct evidence, and must be established in whole or in part by proof of collateral circumstances. They are carried on under the cover of secrecy, and the participants are rarely found to be frank and candid witnesses. And while, generally speaking, fraud is not to be presumed, yet when all the circumstances combined present a showing that can be reconciled with no reasonable theory of good faith, courts will not hesitate to place the stamp of invalidity upon the transaction. In the case before us a careful examination of the abstracts and of the transcript convinces us beyond all doubt that the acquiring of the tax title was brought about by a wrongful and collusive arrangement between the life tenant, Edward J. Hale, his wife, Elsie J. Hale, his father-in-law, Park, and their mutual friend and confidant, Terry, with the express purpose and object of eliminating the interests of the remaindermen.

We shall not extend the opinion to state the testimony at length. It is enough to say that soon after coming into the life estate Hale began to seek the help of a friend to procure a tax title to the land, and circumstances demonstrate that Terry, an old and intimate acquaintance, was complaisant enough to serve his purpose. Hale left the tax of 1896, a matter of some twelve dollars, to become delinquent. At the treasurer's sale Terry, who never before or since purchased a piece of land for taxes, bought it in. Within a few days after the deed was procured he conveyed the property, worth one thousand to fifteen hundred dollars,

to Park for the amount of his investment in it, less than one hundred dollars, and immediately and as a part of the same transaction and pursuant to Terry's request Park conveyed it to Hale's wife and children. Terry said that he knew the condition of the title and that from the outset he intended to do just what he did do; that is, obtain a tax title and transfer it to Hale's family. Whether Park was a party to the arrangement originally, or was called in later to serve as a conduit through which to pass the title from the purchaser to the Hale's and thereby add to the difficulty of tracing the fraud, is immaterial. He does not pretend to have taken the title for any other purpose than to give the benefit of it to his daughter and her family. While Terry swears that he never mentioned to Hale the matter of his purchase of the land for taxes, it must be presumed that Hale knew perfectly well what was going on in this respect. Notice of the impending conveyance by the treasurer was served upon him, and, if he did not rest in the certainty that the certificate was in the hands of a friend on whom he could rely, it is incredible that he would permit this valuable property which furnished him home and shelter for life to pass from his hands for the trifling sum required to redeem it. Terry's story is broken, halting, and incoherent, and in every line betrays confusion not unusual in a witness who will not willingly tell an untruth, but finds perfect frankness embarrassing. It is not at all improbable that Hale harbored the feeling that his sister ought to have devised the land to him absolutely, nor was it entirely unnatural that his personal friends should sympathize in that feeling and be easily persuaded that to assist him in cutting out the remaindermen and transmitting his life estate into a fee in himself or in members of his immediate family would be a meritorious act. But this sympathy, however amiable and pardonable in itself, cannot be allowed to disguise the legal wrong involved in evading the effect of the testator's will and diverting the property from the

purposes to which she had dedicated it. The property was hers to give or to dispose of as she wished. Under her will the plaintiffs held the remainder by a right and title no less sacred than the right and title of Hale to a life tenancy; and equity will not look with tolerance upon any scheme or plan which would enable him to make his own wrong and neglect of duty a means by which to destroy the estate of the remaindermen. The fact that the title was taken in the name of the wife and children of the life tenant instead of his own does not serve to affect the legal phase of the transaction. The children are infants of such immature years as to have no intelligent comprehension of the deal, and no consideration was given for or by them for the conveyance in their favor. The wife did not invest a farthing in it. They were simply the passive trustees in whom the title was wrongfully placed to further the central and controlling purpose of the husband and father to exterminate the remainder which had been created in his sister's will in favor of the plaintiffs. This conclusion renders unnecessary any discussion of the other questions raised by this appeal.

We may say, however, that even in the absence of any combination or collusion between the life tenant and Terry or the wife of the life tenant occupying the premises with her husband as a homestead, she could not obtain a valid tax title to the property as against her husband or against those to whom he owed the duty to keep down the taxes. *Laton v. Balcom,* 64 N. H. 92 (6 Atl. 37, 10 Am. St. Rep. 381); *Chace v. Durfee,* 16 R. I. 248 (14 Atl. 919); *Rothwell v. Dewees,* 67 U. S. 613 (17 L. Ed. 309); *Ward v. Nestell,* 113 Mich. 185 (71 N. W. 593); *Robinson v. Lewis,* 68 Miss. 69 (8 South. 258, 10 L. R. A. 101, 24 Am. St. Rep. 254); *Busch v. Huston,* 75 Ill. 343; *Myers v. Reed* (C. C.), 17 Fed. 406; *Weller v. Rolason,* 17 N. J. Eq. 19; *Bracken v. Cooper,* 80 Ill. 228; *Williams v. Morris,* 95 U. S. 455 (24 L. Ed. 360); *Burns*

2. SAME.

v. *Byrne,* 45 Iowa, 285.   The rule of these cases as applied
to husband and wife is not founded upon any real or sup-
posed privity of estate in the property, but "upon consid-
erations of public policy, and conclusively imputes to the
one, as derived from the other, knowledge of those facts the
existence of which precludes the other from action.  The op-
portunities which would be afforded for fraudulent prac-
tices would be so numerous and the difficulty of exposing
them so great that courts apply the doctrine of estoppel to
both, and thus close the door to temptation."   Robinson v.
Lewis, *supra.*

It is a general and just doctrine that a person having
such an interest in land as would entitle him to redeem from
tax sale cannot, by taking a tax title, eliminate the rights of
others jointly interested with him in such property.   *Lane
v. Wright,* 121 Iowa, 376; *Cowdry v. Cuthbert,* 71 Iowa,
733; *Garrettson v. Scofield,* 44 Iowa, 37; *Manning v. Bo-
nard,* 87 Iowa, 648.   That the wife has an interest in the
homestead which she is entitled to protect by redeeming from
tax sale, there can be no room for doubt.   *McClure v. Bra-
niff,* 75 Iowa, 38; *Adams v. Beale,* 19 Iowa, 66; *Chase
v. Abbott,* 20 Iowa, 154; *Sayers v. Childers,* 112 Iowa, 677;
*Byers v. Johnson,* 89 Iowa, 283; *Sanders v. Ellis,* 42 Ark.
215.   The homestead right is created, not for the benefit of
the husband or wife alone, but for the benefit of the family,
and, as a matter of first impression, it would seem that not
only the husband and wife but the children of the family as
well should be held entitled to protect their right in the
homestead by redeeming from any lien or charge which
threatens to deprive them of its shelter.   If such be the case,
we think it must follow that when any member of the family,
occupying and using the homestead in common with other
members, acquires a tax title to the common home it should
be held to operate as mere payment of the tax, or redemp-
tion from the sale and the holder of the apparent legal title

thus acquired be treated as a trustee for the head of the family in whom it was originally vested.

The plaintiffs were entitled to the relief demanded, and the decree of the district court must be reversed. Decree will be entered in this court if appellant so elects within twenty days from the filing of this opinion; otherwise, the case will be remanded for a decree in the district court.— *Reversed.*