F. P. RUNYAN et al. v. FARMERS BANK OF LIBERTY CENTER et al.

LIBERTY CENTER CONSOLIDATED SCHOOL DISTRICT OF WARREN COUNTY, Appellee, v. FARMERS BANK OF LIBERTY CENTER et al., Appellants.

No. 39960.

April 14, 1930.

*Watson & Watson* and *J. W. Kridelbaugh*, for Charles J. Millican, Receiver, appellant.

*John Fletcher*, Attorney-general, and *Earl F. Wisdom*, Assistant attorney-general, for R. E. Johnson, Treasurer of State, J. W. Long, Auditor of State, and L. A. Andrew, Superintendent of Banking, appellants.

*Charles W. Lyon*, for claimant, Liberty Center Consolidated School District, appellee.

WAGNER, J.—On October 10, 1927, the Farmers Bank of Liberty Center, a private bank, closed its doors, and soon thereafter, C. J. Millican was appointed receiver. W. A. Brewer had been the cashier of said bank since 1918 until the time of its closing, and during the period of time in question, was the treasurer of the Liberty Center Consolidated School District. Brewer was not one of the partners interested in this private banking institution. It is conceded that this bank had been

properly designated by the board of directors of the school district as the depository bank for the school funds. The moneys of the school district were deposited in the bank, and prior to 1926, the account was kept in the name of W. A. Brewer, Treasurer of School Account, and after that time,, as "School Account." At the time of the closing of the bank, the school account in the bank was short the sum of $5,000, and the intervener in this proceeding asks the establishment of its claim for said amount against the receiver of the bank, and that the same be established against, and ordered paid out of, the state sinking fund for public deposits. All of this school fund account except the $5,000 shortage has been allowed and heretofore paid out of the state sinking fund. The trial court granted the school district the relief prayed, and from this action by the trial court both the receiver of the bank and the state officers representing the state sinking fund have appealed.

At the time of the trial, the parties stipulated as follows:

"It is stipulated and agreed: That, at the close of business on the 10th day of October, 1927, there was on deposit in the School Account of the treasurer of the claimant in the defendant Farmers Bank, and belonging to claimant, the sum of $7,887.60; and that same consisted of a checking account of $2,887.60, and a certificate of deposit of $5,000; that there would have been $5,000 more to the credit of said School Account of the treasurer of claimant school, except for the following items:

"Debits:

| | | |
|---|---|---|
| "May 19, 1923 | $2,000.00 | |
| "July 17, 1923 | 500.00 | |
| "June 16, 1924 | 2,000.00 | |
| "July 28, 1924 | 250.00 | |
| "Mar. 14, 1925 | 700.00 | |
| "Sep. 3, 1926 | 1,000.00 | $6,450.00 |

"Credits:

| | | |
|---|---|---|
| "June 21, 1923 | 1,000.00 | |
| "Jul. 31, 1923 | 100.00 | |
| "Jul. 31, 1925 | 350.00 | $1,450.00 |

"Balance .....................................................$5,000.00

"Leaving the School Account at the bank short in the sum

of $5,000 at the time of the closing thereof, which amount of money W. A. Brewer, who was, during all of the time in question, treasurer of claimant school district, and also cashier of defendant Farmers Bank, appropriated to his individual use. Said $5,000 was not drawn out with the knowledge of the school board, nor on order or warrant of the president and secretary of claimant school district, nor for the use of the school district, and neither was it drawn out with the actual knowledge of the owners of the bank.''

The testimony of Brewer, as well as the exhibits and records of the bank, sheds some light upon the proposition which is before us for our determination. The questions presented are: Is the $5,000 shortage a loss which falls upon the school district or upon the bank? and, Is the state sinking fund liable therefor? The intervener, school district, contends that its claim should be established against both the bank and the state sinking fund; the receiver of the bank contends that the bank is not liable therefor; and the state officers, representing the state sinking fund, contend that neither the bank nor said fund is liable for the payment thereof.

It appears that Brewer was referee in a partition suit, denominated in the record the ''Peebler Estate,'' and was administrator of what is shown in the record as the ''Thorne Estate,'' and that the money coming into his hands in such trust capacities was kept on a checking account in the bank. He also carried a private account in the bank.

A check in the amount of $2,000 was drawn, payable to the order of ''Peebler account,'' and signed ''W. A. Brewer School Account,'' which check is stamped paid May 19, 1923; and the school account was debited with $2,000, and the Peebler account given a credit of the same amount, the deposit slip showing the latter credit to be a check on ''W. A. Brewer school acct. $2000.''

On July 17, 1923, a check in the amount of $500, payable to the order of Farmers Bank, and signed ''W. A. Brewer, Treasurer of School Account,'' was stamped paid, and the school account debited with said amount, which Brewer testifies was credited on some other account, ''possibly my own.''

On June 16, 1924, a certificate of deposit (No. 5487) payable to Brewer, as treasurer, was marked paid, and on the same

date, Brewer's account was credited with the same amount, the deposit slip showing said credit to be a "C. D. No. 5487 Treas. Acct. $2,000."

On July 28, 1924, the school account was debited with $250, and the Thorne account credited with the same amount. There was no check used in this transaction,—only a charge against one account, and a credit, by way of deposit slip, to the other; but the deposit slip shows "S. Acct. $250."

On March 14, 1925, a certificate of deposit for $2,000 payable to Brewer, as treasurer, was marked paid, and on the same date, $700 was credited to Brewer's account, and a new certificate for $1,300 made payable to Brewer, as treasurer. The deposit slip shows: "From school fund $700."

On September 3, 1926, the school account was debited with the sum of $1,000, and Brewer's account credited with the same amount.

The amount of the aforesaid defalcations is the sum of $6,450; but on June 21, 1923, the school account was credited with the sum of $1,000, on July 31st of the same year, with $100, and on July 31, 1925, with the sum of $350, leaving as a total deficit the aforesaid sum of $5,000. All of the aforesaid entries made upon the records of the bank were made by Brewer, as cashier.

Upon the foregoing facts, we must determine whether the bank and the sinking fund are liable for the $5,000 shortage.

In a written opinion, the trial court held that the school district is the depositor. The appellants contend that this position is not tenable. On this proposition we are disposed to  agree with the trial court. It is the duty of the treasurer of a school district to receive all moneys belonging to the district, and deposit the same in some bank within the county, as directed by the board of directors. See Sections 4316 and 4319 of the 1927 Code. Section 1090-a2 of the Code provides:

"The purpose of said fund [sinking fund] shall be to secure the payment of *their deposits* to state, county, township, municipal, and school corporations *having public funds deposited* in any bank in this state, *when such deposits* have been made by

authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds." (The italics are ours.)

It is clearly apparent from the statutes that the deposits, as made in the bank, are the deposits of the school district. The board of directors determine for the district where the deposit  shall be made, and when made, the deposit is that of the district. The treasurer is only the agent of the district, whose duty is to comply with the law and make the deposit for the district, as directed. Therefore, upon the making of the deposit, the relation of debtor and creditor existed, as between the bank and the school district. It was the duty of the treasurer to pay moneys of the school district only upon the order of the president, countersigned by the secretary. Section 4316, Code, 1927. It is conceded that no such action was taken by the president and the secretary. The school district, the creditor, has not been paid the amount of the deposit, nor has it received the benefit thereof. In *Scow v. Farmers & Merch. Sav. Bank,* 136 Iowa 1, we made the following pronouncement:

"If a bank cashier or a bank president who is engaged in the active charge and control of the bank's business receives at his usual place of business the money or credits of a customer, either as a time deposit or for credit on open account, the bank becomes at once chargeable therewith, and the fact that the officer puts it down in his own pocket or converts it to his own use is no defense to an action by the depositor, if no collusion in the wrong appears on the part of the latter. The failure of the officer to make proper entry in the books, or his wrongful act in making an improper entry, is, so far as the depositor is concerned, the failure and wrong of the bank's own agent, and, under such circumstances, in the absence of guilty knowledge or collusion on part of the depositor, the loss, if any, is its loss."

Collusion is the equivalent of conspiracy. No one can collude or conspire with himself. It requires two or more to con-

stitute a collusion or conspiracy. Collusion is defined by Webster's New International Dictionary as:

"An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law."

Conspiracy is defined by the same author as:

"An agreement, manifesting itself in words or deeds, by which two or more persons confederate to do an unlawful act, or to use unlawful means to do an act which is lawful."

The school district having established the fact that the deposit was made in the bank, the burden is upon the bank to satisfactorily account for the deposit. See *Winnebago County v. Horton*, 204 Iowa 1186.

The appellants contend that the bank has fully accounted for the money. This cannot be true. Brewer had no authority from the school district to disturb the funds in the bank. Brewer, the school treasurer, knew of his lack of authority. Brewer, the cashier, also knew it. In the drawing of checks and the debiting and crediting of various accounts, thus bringing about the juggling of accounts as shown by the record, Brewer represented neither the district nor the bank, but himself only. The record reveals that there was not the slightest oversight or control over Brewer exercised by anyone interested in this private bank. Even a casual examination of the books and records of the bank would have disclosed the embezzlement of the funds of the bank. The records of the bank clearly show that, on May 19, 1923, Brewer transferred $2,000 from the school account to the "Peebler Estate" account. Said records also clearly show a transfer from the school account to the "Thorne Estate" account of $250, on July 28, 1924. The same situation is also obvious as to the other transactions. By these various transactions, there was only a juggling of accounts, but it did not amount to a payment of the deposit. It cannot be gainsaid that money constituting a general deposit in a bank becomes and remains the property of the bank, and the status of debtor and creditor exists between the depositor and the bank. The embezzlement accomplished by Brewer was a larceny of the funds of the bank. Viewing the case from any angle which we may,

154

it is quite clear that the bank has failed to account for the fund to its depositor, the school district. Therefore, the bank is liable to the school district, and the sinking fund is also liable for the payment of the amount of the deposit.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.—*Affirmed.*

All the justices concur.