**FIRST CITY NATIONAL BANK OF HOUSTON, Plaintiff,**

**v.**

**BRAZOSPORT TOWING CO., INC. In Personam, et al., Defendants.**

**Civ. No. H–83–6040.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 17, 1984.

Order Amending Opinion and Denying Motion to Revise and Supplement June 25, 1984.

Richard Stanford, Houston, Tex., for plaintiff.

L. Glen Kratochvil, Houston, Tex., for defendants.

### MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

On February 8, 1984, this Court held a hearing to consider Movant's Willamette Leasing & Chartering Co., Inc.'s Motion to Confirm Sale of Defendant Oil Screw HON-DO, Official Number 518966, her engines, tackle, apparel, etc. *in rem* to Willamette. This Motion is opposed by Plaintiff First

City National Bank of Houston, Defendant Brazosport Towing Co., Inc., and Intervenor B.P. Oil International, Ltd. Opposition to the Motion to Confirm is based on claims of collusion and gross inadequacy of price. After carefully considering the matters before it, this Court finds that the circumstances surrounding the sale were fraught with collusion. Therefore the Motion to Confirm is DENIED.

Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 2004.

## I. Facts

Defendant Brazosport Towing Co. ("Brazosport") purchased the M/V HONDO in 1981 for $1.6 million. Brazosport financed $1.2 million of that sale through First City National Bank of Houston ("the Bank"), which took a first preferred ship's mortgage on the HONDO. Brazosport operated the vessel as an ocean-going tug, using it to move barges. In the course of operating the HONDO, Brazosport incurred a debt of $36,327.75 to BP Oil International, Ltd. ("BP Oil"). That debt remains unpaid.

Financial troubles have recently plagued Brazosport. In October, 1983 Brazosport attempted to consolidate its indebtedness on the HONDO and other vessels with a bank in Victoria. Incident to that refinancing attempt, Mr. Robert Whitehurst performed a condition and valuation survey on the HONDO; Mr. Whitehurst appraised the vessel at $980,000. Despite these efforts, attempts to meet the debt on the HONDO failed, and the M/V HONDO and a companion vessel were seized in early October, 1983, and a Marshal's sale was scheduled. An appraisal by the Bank's surveyor made after the seizure valued the HONDO at $350,000.

In January, 1984, the President of Brazosport, Eddie Dyer, undertook negotiations regarding disposition of the vessel with Paul Sause of Portland, Oregon. Mr. Sause is both an officer and director of Sause Brothers Ocean Towing Co., Inc., and Willamette Leasing and Chartering Co., Inc. ("Willamette"), two Oregon corporations. Sause boarded and examined the HONDO, although at no time during Sause's examination were the HONDO's engines started. Sause agreed with Dyer and a representative of the Bank to strike the following deal:

1. The Marshal's sale was to proceed in order to extinguish all outstanding liens on the HONDO.
2. Sause Bros. was to bareboat charter the vessel for four years at $90,000 annually, plus interest.
3. Sause Bros. was to receive an option to purchase the HONDO when the bareboat charter expired for $540,-000. This option was to be secured by deeds of trust given by Dyer.
4. The Bank was to forgive Brazosport all previous indebtedness.

This agreement was memorialized in two Letters of Intent. The Marshal's sale was advertised for one day only in one newspaper only.

During the period between the signing of the Letters of Intent and the Marshal's sale, Mr. Sause became concerned over repeated delays in inspecting the HONDO fully. He conceived the idea that his leasing company, Willamette, could purchase the M/V HONDO at the Marshal's sale. Consequently, Sause had checks drawn upon an Oregon bank to enable his representative to bid on the vessel at the sale.

Sause's representative took the checks to Houston from Oregon and met with Dyer. The representative, not disclosing that Sause was concerned about the deal and preparing alternatives to carrying through with the deal, inspected the HONDO thoroughly and test-ran the vessel's engines on the day before the Marshal's sale. Sause and his representative conferred, and Sause instructed his representative to tender the checks to a marine broker, C.J. Thibodeaux & Co., for purposes of purchasing the HONDO at the Marshal's sale. Sause authorized bids of up to $450,000 for the HONDO. The representative followed these instructions.

On the day of the Marshal's sale, Mr. Sause called the Bank to inform it that he would not pursue the deal memorialized in the Letters of Intent. During the phone call, which Sause made only an hour before the sale was to take place, Sause advised the Bank not to bid high on the boat. However, there is no indication that at this point Sause knew of the Bank's appraised value of the HONDO.

At the Marshal's sale, G.H. White of Thibodeaux Co. bid on the boat. Without disclosing for whom he bid, White bid

against the Bank for the vessel. White purchased the vessel for $360,000, the Bank having stopped bidding at the appraisal level of $350,000. Thus the boat was sold to Willamette.

Two weeks after the sale, a California concern, American Navigation Company, entered an upset bid on the HONDO. American Navigation's bid, as conveyed by its President, Robert Whipple, was $475,-000.[1] In addition, both Dyer and the Bank have received inquiries of approximately $500,000 since the sale.

Intervenor Willamette has filed the Motion to Confirm the sale of the HONDO under consideration. The Bank, Brazosport, and BP Oil oppose the Motion.

## II. Legal Standard

■ Prior to confirmation, a sale in admiralty may be set aside at any time, but in so doing, courts should exercise extreme caution. 2 C.J.S. Admiralty § 247 (1972), *Wong Shing v. M/V Mardina Trader,* 564 F.2d 1183, 1188 (5th Cir.1977). While this Court recognizes the need to inspire confidence in judicial sales by confirming those sales made to the highest bidder at fairly conducted auctions, *Munro Drydock, Inc. v. M/V Heron,* 585 F.2d 13, 14 (1st Cir. 1978), the Court also recognizes the need to protect the interests of the debtors and creditors, especially in light of evidence that misconduct or impropriety has occurred in connection with the sale.

■ The recognized grounds upon which a sale may be set aside are either fraud or collusion, or gross inadequacy of price.[2] *Jefferson Bank & Trust Co. v. Van Niman,* 722 F.2d 251, 252 (5th Cir.1984). The price must be so grossly inadequate that it shocks the conscience, *id.* at 252, and amounts to either fraud or unfairness. 2 C.J.S. Admiralty § 247 (1972). A more detailed discussion of the grounds of collusion and grossly inadequate price follows. A discussion of fraud is omitted since the Court finds no evidence indicating the existence of fraud in this case.

■ The Court will consider collusion as a ground for setting aside a sale. The Court has been unable to find a definition of "collusion" in the context of a judicial sale in an admiralty action. Black's has defined the term in the following manner:

> An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose.

*Black's Law Dictionary* 240 (5th ed. 1979).

Despite the absence of cases in admiralty pertaining to collusion, the Fifth Circuit has discussed collusion in other contexts. For example, in regard to private antitrust actions, that court has held that proof of a conspiracy, a collusive arrangement, does not require an express agreement; it is enough that the parties, with knowledge that concerted action was contemplated and invited, gave their adherence to and participated in the collusive scheme. *Gainesville Utilities v. Florida Power & Light Co.,* 573 F.2d 292, 300 (5th Cir.), *cert. denied* 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978). *See also Schilling v. Belcher,* 582 F.2d 995, 1002–1003 (5th Cir.1978) (discussing collusive joinder of parties to invoke federal diversity jurisdiction in a stockholder's derivative suit).

■ The second ground to be discussed is that of price. In setting aside a sale on the basis of price, it is within the discretion of the tribunal ordering the sale to determine whether the price is grossly inadequate, thereby justifying refusal of confirmation. *American Tramp Ship. & Dev. Corp. v. Coal Export Corp.,* 276 F.2d 570, 571 (4th Cir.1960). The test for setting aside a sale based on inadequacy of price is clear: when there are substantial disparities between the high bid at sale and both the appraised value and upset bid, confirmation should be withheld, at least where the interests of creditors do not suggest a different course of action. *Munro Drydock,* 585 F.2d at 16.

No firm, fast rules exist which dictate to courts by what percentage an upset bid must exceed the previous high bid at sale

---

1. Subsequent to the hearing on the Motion to Confirm Sale, Whipple submitted an affidavit to the Court increasing his upset bid to $550,000.

2. *Cf.* 4B Collier on Bankruptcy at 1180, 1187 (14th ed. 1978) (standard for setting aside confirmed bankruptcy sale higher than for refusing to confirm sale).

before a sale can be set aside. This is a matter largely left to the discretion of the court. In *Ghezzi v. Foss Launch & Tug Co.*, 321 F.2d 421 (9th Cir.1963), for instance, the circuit court found that the district court had not abused its discretion in confirming a bid of $41,000 when presented with an upset bid of $50,000. Nevertheless, the Court did hold that when presented with an upset bid of $70,000, where the appraised value was an amount in excess of 100% of the successful sale bid, and the upset bid an amount in excess of 75% thereof, the interest of justice required a reconsideration of confirmation by the District Court. Similarly, in *Munro Drydock*, 585 F.2d at 13, the Court held that given an appraised value 200% greater than the sale price and the likelihood of an upset bid at least three times larger than the sale price, the district court exceeded its discretion in confirming the sale without further inquiry into possible upset bids. *Cf. Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1188–89 (5th Cir.1977) (confirmation of sale affirmed despite evidence of a potential upset bid more than twice that much and a fair market value three times greater where appraisal value was undocumented and testimony regarding possible upset bid was "evasive.")

III. Application of the Law to the Facts

█ Based upon facts adduced at the hearing on the Motion to Confirm Sale, the Court concludes that the circumstances surrounding the Marshal's sale of the M/V HONDO were fraught with collusion.

The evidence in the case at bar indicates that Sause Bros., Willamette, and the Bank planned to use the Marshal's auction as a sham for what was, in reality, intended by those parties to be a private sale. This arrangement of the sale constitutes collusion, one of the recognized grounds for setting aside a Marshal's sale prior to confirmation. The Court is concerned not with whether the collusive activities operated to the detriment of any of the parties to this action, but rather with whether collusion exists at all.[3] Collusion impedes one of the primary purposes of a Marshal's sale, which is to provide a fair and open forum for all interested bidders.

By entering into the agreement with Mr. Sause, the Bank and Brazosport intended for the Marshal's sale to extinguish all existing liens on the M/V HONDO. One of the functions of a judicial sale is to protect the interests of the creditors, which in turn entitles lienholders to expect that the sale will be public and fair in every respect. Moreover, the evidence indicates that Brazosport failed to advertise the sale fully, thereby deterring parties other than Mr. Sause from attending.

In addition, shortly before the sale took place, Mr. Sause placed himself in a favorable position to obtain the HONDO at a low price. Mr. Sause called the Bank one hour before the sale was to commence to renege on his agreement and to advise the Bank to bid low, knowing that his own agent, who would very likely be the only other bidder at the auction, planned to bid on the HONDO on behalf of Willamette. These facts clearly indicate that the circumstances and activities surrounding the Marshal's sale were collusive.

Although the Court finds that the collusion evidenced by this case is alone enough to deny the Motion to Confirm, the gross inadequacy of price is another ground upon which to set aside the sale.

The upset bid presented by Mr. Whipple of $475,000 is approximately 32% higher than the $360,000 for which the vessel was sold at auction.[4] Although the Court has been presented with evidence of appraisal values ranging from $350,000 to $980,000, the record indicates that there was a general consensus among the parties who testified at the hearing that the vessel was actually worth approximately $500,000. Moreover, the fact that in 1981 the Bank financed the M/V HONDO for $1.2 million is some evidence that the tug is worth substantially more than the $360,000 for which it was sold at auction.

Given the upset bid which far exceeds the high bid at auction, in conjunction with evidence of an actual worth of the vessel

---

3. Thus Willamette's projections that a new sale will not generate sufficient revenue to satisfy BP Oil's lien is irrelevant. BP Oil, which opposes the Motion to Confirm, had a right to have the HONDO sold at a sale free of collusion, regardless of whether the sale's proceeds would actually pay BP Oil's claim.

4. The newly-offered upset bid of $550,000 is in excess of 50% of the price for which the vessel was sold at auction.

which is substantially higher than the present sale price, the Court would be justified in setting aside the sale.

It is hereby ORDERED, ADJUDGED, and DECREED that the Motion to Confirm Sale of the M/V HONDO, Official Number 518966, her engines, tackle, apparel, etc. be and hereby is DENIED.

It is further ORDERED that the M/V HONDO be resold by the Marshal of the Court, free and clear of all liens, claims mortgages, and encumbrances on February 29, 1984 at 10:00 A.M. in the United States Marshal's office located at the U.S. Courthouse, 515 Rusk, Houston, Texas 77002.

It is also ORDERED that the United States Marshal shall issue a public notice of such sale in *The Houston Chronicle* on any three (3) days prior to the sale of the vessel. Publication may also be made in such other journals as Defendants may reasonably designate. Said Notice shall specify the time and place of the sale and that prospective buyers, may, on application to the Marshal or Substitute Custodian and at such times and manner as the Marshal or Substitute Custodian may direct, view said vessel and its engines, tackles, apparel and appurtenances for the purpose of inspection.

It is also ORDERED that the sale of said vessel and its engines, tackles, apparel, and appurtenances will be to the highest and best bidder and said bidder will be required to deliver to the Marshal, at the time of the sale, earnest money amounting to at least twenty-five percent (25%) of the bid price in cash or certified check. It is further ORDERED that the balance of the purchase price will be paid to the Marshal by cash or certified check within forty-eight (48) hours of the auction.

It is also ORDERED that the Plaintiff may bid at said public sale, and that if Plaintiff is the highest and best bidder, it will not be required to pay the purchase price in cash or its equivalent, but shall be entitled to credit the amount of its bids on the amount due and owing to it under its First Preferred Ship Mortgages on the vessel described in the Original Complaint herein.

It is further ORDERED that all court costs, Marshal's fees and expenses, clerk's fees, taxes and costs of sale shall be deducted from the proceeds of the sale.

It is also ORDERED that the Marshal shall bring and deposit the proceeds of said sale into the registry of this Court pending the further disposition of this action.

The Clerk shall file this Order and provide a true copy to counsel for all parties.

## ORDER

Came on to be heard the Motion to Revise and Supplement Memorandum Opinion and Order of Plaintiff First City National Bank. Having considered the arguments of the parties and the applicable law, the Court is of the opinion that the Motion should be DENIED.

Plaintiff contends in its Motion that the Court's Order denying confirmation of the sale of the M/V HONDO was erroneous. Plaintiff advances two arguments in support of its contention. First, the Court noted in its Order that the sale was advertised for only one day (*see* pages 116 and 118 of that Order). Evidence appended to the instant Motion indicates that the sale was advertised for seven days. The Court therefore ORDERS that its Order be amended to reflect that fact.[1] However, the Court has reviewed its Order and finds that the change in the number of days the sale was advertised does not affect the Court's conclusion that the sale was collusive, ample evidence supporting that conclusion, or the alternative independent ground that Willamette Leasing & Chartering Co., Inc.'s bid price was grossly inadequate.

Plaintiff's second argument also fails. In this argument, Plaintiff asserts that a public sale is not converted into a private sale by arranging for a buyer to bid at a public-sale. In essence, Plaintiff argues that the Court is simply wrong in its assessment of the law without providing additional authority to support its bald assertion. The Court therefore sees no need to reconsider its prior ruling.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that the Motion be and hereby is DENIED.

The Clerk shall file this Order and provide a true copy to counsel for all parties.

---

1. On page 116, the following change shall be made: "The Marshal's sale was advertised for seven days in one newspaper only." On page 118, the sentence stating that "Moreover, the evidence indicates that Brazosport failed to advertise the sale fully, thereby detering parties other than Mr. Sause from attending" shall be stricken.