Revised July 6, 1999

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 99-30256

---

DYNAMIC MARINE CONSORTIUM, S.A.,

Plaintiff,

versus

LATINI, MV, her engines, tackle, apparel, furniture,
etc., in rem fka Polyxeni, MV,

Defendant,

ENSENADA SHIPPING, LTD.,

Movant-Appellant,

versus

ESCO MARINE, INC.

Movant-Appellee,

and

IMACASA MARITIME AND TRADING, LTD.,

Intervenor Plaintiff-Appellee,

and

WORLD VISION, INC.; COOPERATIVE FOR AMERICAN RELIEF
EVERYWHERE, INC., also know as C A R E, Inc.,

Intervenors-Appellees.

\*   \*   \*   \*   \*

ANZ GRINDLAYS BANK, LIMITED,

Plaintiff-Appellee,

versus

LATINI, MV, her engines, tackles, apparel, furniture,
etc.; ET AL.,

Defendant,

ENSENADA SHIPPING, LTC.,

Appeals from the United States District Court
For the Eastern District of Louisiana

June 22, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

This appeal challenges the district court judgment vacating the auction of the vessel M/V LATINI because of collusion in the bidding process. For the reasons assigned, we dismiss the appeal as moot and alternatively affirm.

The LATINI, en route down the Mississippi River, experienced a fire and subsequently was grounded. While detained, the vessel was seized by Dynamic Marine Consortium, S.A. pursuant to a claim by fuel bunkers. The vessel's mortgage holder, ANZ Grindlays Bank Ltd., represented herein at pertinent time by Daniel Tadros, Esq. of the firm of Chaffe, McCall of New Orleans, then sought to foreclose on its $7 million mortgage.

The vessel was set for sale at a judicial auction on January 28, 1999, with a minimum bid of $340,000, one-half of the appraisal amount. Ensenada Shipping, Ltd. was the successful bidder at the $340,000 price. There were no other bidders.

Immediately after the auction, Esco Marine, Inc., a potential bidder, and World Vision, Inc. and Cooperative for American Relief Everywhere, Inc., the cargo interests, filed an action challenging the auction.

On February 17, 1999, the district court set aside the auction based upon a finding of collusion. According to the district court, at the time of the sale Tadros represented both the mortgage holder ANZ Grindlays and Ensenada. Prior to the sale, prospective bidders had been informed, primarily by Tadros, that ANZ Grindlays planned to bid its $7 million mortgage. This obviously and understandably chilled potential bidders. On the day of the sale, Tadros appeared at the sale. He appeared, however, as counsel for Ensenada, not as counsel for ANZ Grindlays. Tadros gave no forewarning of this significant change in representation. There was no bid by ANZ Grindlays on its mortgage and Ensenada, in its sole bid, acquired the vessel for the minimum bid price. The district court found that no potential bidder except Ensenada knew that ANZ Grindlays would not place a bid and that Ensenada and ANZ Grindlays had an agreement that ANZ Grindlays would present no competition in the bidding process.

The district court found that there was "collusion" justifying the setting aside of the sale, but found that there was no "fraud" and that the vessel's auction price

3

was not "grossly inadequate."[1]  In doing so, and referring to Black's Law Dictionary, the district court defined "collusion" as the "lawful means for the accomplishment of an unlawful purpose" and as a "secret understanding between two or more persons prejudicial to another, or a secret understanding to appear as adversaries, though in agreement."[2]  The district court correctly rejected Ensenada's argument that "collusion" also requires fraudulent conduct.

The district court ordered a second sale of the LATINI, which took place on March 25, 1999.  The successful bidder in that auction, Dr. Chand Kewalramani, obtained the vessel for a bid price of $1,010,000.  Ensenada objected to the confirmation of the second sale, which the district court denied.  The district court confirmed the second sale on April 9, 1999 and Ensenada has appealed that confirmation separately.  As officers of the court counsel advise that the vessel has been sold by Dr. Kewalramani.

An action is moot if, as a result of intervening circumstances, a party no

---

[1] An auction sale of a vessel may be set aside until confirmation on the basis of (1) fraud; (2) collusion; or (3) gross inadequacy of price. **Latvian Shipping Co. v. Baltic Shipping Co.**, 99 F.3d 690 (5th Cir. 1996).

[2] For this second definition, the district court cited Webster's American College Dictionary.

longer has a legally cognizable personal interest in the subject of the litigation.[3] Of particular relevance to the case at bar, confirmation of the sale of a vessel transfers title and possession of the vessel to the confirmed owner.[4] The district court's April 9, 1999 confirmation of the second sale of the LATINI transferred title and ownership of the vessel to Dr. Kewalramani. Because title to the LATINI has now been transferred formally, Ensenada's appeal of the district court's order annulling the first sale is moot.[5]

Were we to conclude that this appeal is not moot, however, we are totally persuaded and would conclude that the district court properly set aside the first sale of the vessel for substantially the reasons stated in its February 17, 1999 order and its March 5, 1999 order denying the motions to alter or amend.

APPEAL DISMISSED.

---

[3] **Goldin v. Bartholow**, 166 F.3d 710 (5th Cir. 1999).

[4] **First Nat'l Bank v. M/V Lightning Power**, 776 F.2d 1258 (5th Cir. 1985) (stating that the auction bid is accepted and the sale consummated upon confirmation by the court); *see also* **Latvian Shipping Co.**, 99 F.3d at 692 (holding that "*[u]ntil* confirmation, an auction sale in admiralty may be set aside") (emphasis added).

[5] *See* **M/V Lightning Power**, 776 F.2d at 1262 (noting that appeal of an auction sale may be moot if the subject vessel had been resold to a third party).