2003 ND 3

Maria L. HIGGINS, Petitioner, Appellant and Cross– Appellee,

v.

Paul E. TRAUGER, County Auditor of Morton County, Respondent and Appellee.

Steve Thilmony and Garry Strandemo, Plaintiffs, Appellees and Cross– Appellants,

v.

William Higgins; Sanitary Plumbing and Heating; Dakota Northwestern Bank, National Association, n/k/a Norwest Bank Bismarck, National Association; United Accounts, Inc.; B & D Supply, Inc. and all other persons unknown claiming any estate or interest in or Lien or encumbrance upon the property described in the Complaint, Defendants.

Nos. 20020132, 20020133.

Supreme Court of North Dakota.

Jan. 17, 2003.

William C. Severin (on brief), and Susan Schmidt (argued), Severin, Ringsak & Morrow, Bismarck, for petitioner and appellant Maria L. Higgins.

Charles S. Miller, Jr., Fleck, Mather & Strutz, Bismarck, for respondent and appellee Paul E. Trauger.

James P. Rausch, Rausch Law Office, Bismarck, for plaintiffs and appellees Steve Thilmony and Garry Strandemo.

KAPSNER, Justice.

[¶ 1] Maria L. Higgins appealed from a judgment and amended judgment quieting title to Morton County property in William Higgins and Harry Reynolds as tenants in common, and dismissing her petition for writ of mandamus directing Morton County Auditor Paul E. Trauger to issue tax deeds to the property to her. Maria argues the trial court erred in ruling she and her husband, William, acted in collusion to divest Reynolds of his interest in the property. In their cross-appeal, Steve Thilmony and Garry Strandemo argue a prior judgment quieting title to the property in them should be reinstated because William did not appeal from that judgment. We affirm.

I

[¶ 2] These appeals follow our remand in *Higgins v. Trauger*, 2001 ND 149, 632 N.W.2d 463. The factual background of this controversy is detailed in that opinion and we need not repeat it here except to the extent necessary for an understanding of the parties' positions in this appeal. William and Reynolds were co-owners of Morton County property located by the "strip" between Bismarck and Mandan. Reynolds resided on the property, but William paid the taxes on the property until allowing them to go delinquent in 1994 and the auditor acquired the property through tax sales. In 1998, Maria Higgins pur-

chased the tax sale certificates for the property. On March 22, 2000, the date the auditor had erroneously informed the parties was the last day to redeem, Reynolds, with the assistance of Thilmony and Strandemo, paid the treasurer the amount required to redeem. Reynolds then quitclaimed his interest to Thilmony and Strandemo.

[¶ 3] Maria sued the auditor, seeking a writ of mandamus compelling him to issue her tax deeds to the property because no one had redeemed by March 21, 2000, the actual last day to redeem. Thilmony and Strandemo sued to quiet title to the property, and the trial court consolidated the cases. The trial court granted summary judgment against Maria, ruling Reynolds had the right to rely on the auditor's representations. The court quieted title to the property in Thilmony and Strandemo and dismissed Maria's petition for writ of mandamus.

[¶ 4] In *Higgins*, 2001 ND 149, ¶ 19, 632 N.W.2d 463 (footnote omitted), we reversed, concluding "[t]he redemption period expired on March 21, 2000, and Reynolds's belated attempt to redeem on March 22 was too late as a matter of law." We also ruled, however, summary judgment was improperly granted on the claim of the auditor, and of Thilmony and Strandemo, that Maria's purchase of the tax sale certificates should be treated as a purchase or redemption under former N.D.C.C. § 57–24–18, by her husband, William.

We conclude the auditor's affidavit raises a genuine issue of material fact whether Maria and William Higgins entered into a collusive arrangement to avoid the prohibitions in N.D.C.C. § 57–24–18. If they did so, Maria Higgins's purchase of the tax sale certificates should be treated as a purchase, or re-

demption, by William Higgins, and William Higgins and Reynolds should be restored to their prior status as co-owners of the disputed property. If they did not enter into a collusive arrangement, a writ of mandamus should issue compelling Trauger, the Morton County Auditor, to issue Maria Higgins the tax deeds to the property.

*Higgins,* at ¶ 24.

[¶ 5] Attorney Bruce Bair, Maria, and the auditor testified at the evidentiary hearing on remand. The trial court ruled Maria and William acted in collusion to deprive Reynolds of his interest in the property.

[I]t was the intention of Maria Higgins and her husband, William Higgins, to proceed in a manner and fashion designed and intended to permit Maria Higgins to acquire title by Tax Deed free and clear of any interest or estate of the then other co-owner, Harry Reynolds.

. . . .

The actions of Maria Higgins and her husband, William Higgins, were designed to circumvent the provisions of the then applicable statute, N.D.C.C. § 57–24–18 so as to divest the other co-owner, Harry Reynolds, from any right, title or interest in and to the subject real property heretofore described.

. . . .

[T]he actions of Maria Higgins and William Higgins constitute collusion to the extent that they were intended and designed to circumvent the application of the above-cited statute then in effect.

. . . .

[A]s a matter of law the purchase of the tax sale certificates by Maria Higgins constituted a redemption of the premises from the effect of the real estate tax sales for the benefit of her husband and the other co-owner of the premises, Harry Reynolds.

. . . .

[A] redemption of the premises is deemed to have occurred and record title to the above-described real property is deemed vested in the then owners of the premises, William Higgins and Harry Reynolds, as tenants in common.

[¶ 6] The court dismissed the petition for writ of mandamus and the quiet title action. These appeals followed.

## II

[¶ 7] Maria argues the trial court erred in ruling she and her husband acted in collusion to divest Reynolds of his interest in the disputed property.

[¶ 8] In *Higgins,* 2001 ND 149, ¶ 22, 632 N.W.2d 463, we quoted *Black's Law Dictionary* 264 (6th ed.1990) in defining collusion as " '[a]n agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law.' " Collusion has also been defined as "a secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them." *Span, Inc. v. Associated Int'l Ins. Co.,* 227 Cal.App.3d 463, 277 Cal.Rptr. 828, 839–40 (Cal.Ct.App.1991) (citation omitted).

[¶ 9] Collusion has been described as "the equivalent of conspiracy." *Runyan v. Farmers' Bank,* 210 Iowa 147, 230 N.W. 418, 421 (Iowa 1930). Proof of an actual agreement is not necessary, and it is sufficient to show that the parties, with knowledge that concerted action was contemplated and invited, gave their adherence to and participated in the collusive scheme. *See First City Nat'l Bank v.*

*Brazosport Towing Co.*, 585 F.Supp. 115, 117 (S.D.Tex.1984). *Compare State v. Gonzalez*, 2000 ND 32, ¶ 17, 606 N.W.2d 873 (stating an agreement to commit a conspiracy need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances). Collusion does not require fraudulent conduct. *See Dynamic Marine Consortium, S.A. v. LATINI, MV*, 179 F.3d 278, 280 (5th Cir. 1999); *Estate of Farish v. United States*, 233 F.Supp. 220, 228 (S.D.Tex.1964).

[¶ 10] What constitutes collusion will differ with each fact situation. *Span, Inc.*, 277 Cal.Rptr. at 840. The burden of proof on the issue of collusion rests with the party asserting that collusion has occurred. *Estate of Farish*, 233 F.Supp. at 228. Whether collusion has occurred is a finding of fact which this Court will not reverse on appeal unless it is clearly erroneous. *Black v. Peterson*, 442 N.W.2d 426, 430 (N.D.1989). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Moen v. Thomas*, 2001 ND 95, ¶ 19, 627 N.W.2d 146. Because a state of mind is rarely proven directly and must usually be inferred from conduct and circumstances, evidentiary conflicts and factual questions about state of mind are properly for the trier of fact to decide and are not appropriate for appellate second guessing. *See State v. Franck*, 499 N.W.2d 108, 111 (N.D.1993).

[¶ 11] In this case, Bair was a friend and neighbor of Maria and William who occasionally performed legal services for them. He testified that, during the late 1980s and early 1990s, William had personally invested more than $43,000 in the disputed property through payments on a contract for deed, taxes and insurance. Maria admitted William and Reynolds had "disagreement[s]" over the property because Reynolds never paid any of the taxes, and William had earlier attempted to bring a partition action against Reynolds. Bair testified that when Maria and William approached him in 1997, "they were concerned about trying to recover their financial investment" in the property. Bair recommended that Maria "purchase the tax certificate if they were going to go that way" because, according to Bair, "I was concerned about mortgages, and liens, and that type of thing, and, of course, she had never, ever been involved in the real estate in any way, and she, I felt, would have a better chance of getting a clear title." Bair testified he advised Maria that the purchase of tax sales certificates "would be a good investment" for her and that if no one redeemed, she would acquire title to the premises and William and Reynolds would lose their interest in the property.

[¶ 12] Maria testified that she purchased the tax sale certificates with a check written on the couple's joint, or "family," checking account. She testified that she deposited between $9,000 and $10,000 in the joint account when the couple first married. Bair testified Maria had not been employed outside the home since he had known her and William had transferred "substantial property" to her to avoid "serious estate tax problem[s]." Maria testified she purchased the tax sale certificates for investment purposes, but admitted she had never purchased tax sale certificates for other property. Maria also testified William simply got "tired" of paying taxes on the property.

[¶ 13] The auditor testified Maria and William together visited his office on "several occasions" and the couple never mentioned "this property being a good investment vehicle." The auditor testified he

believed their reason for wanting to purchase the property was to acquire it "away from Mr. Reynolds."

> I guess basically, you know, they have been having problems with Harry owned joint the land with Bill, and they were wondering any way they could, as far as Harry, how could they buy him out or get out of the land, because there were both names on the title. And I guess I probably suggested a tax certificate method as far as the law would probably suffice, I guess, or do it.

[¶ 14] The trial court found that, although they did not act with "fraudulent intent," Maria and William acted in collusion to attempt to acquire the property free of any interest of Reynolds in violation of former N.D.C.C. § 57–24–18. This finding is supported by the record. Maria and William are married, and a family relationship "may be considered evidence tending to prove a collusive arrangement." *Higgins*, 2001 ND 149, ¶ 22, 632 N.W.2d 463. Maria purchased the tax certificates with a check written on the couple's joint account, even though she had investment accounts in her own name. Maria had never before purchased a tax certificate. *See First Congregational Church v. Terry*, 130 Iowa 513, 107 N.W. 305, 306 (Iowa 1906) (noting as relevant factor in assessing collusive arrangement that "an old and intimate acquaintance . . . who never before or since purchased a piece of land for taxes, bought it in"). Maria and William together visited the auditor's office to check on the status of any redemption of the property. Yet, although William had made a substantial financial investment in the property throughout the years, and

had been served with notice of the redemption period, William made no effort to redeem. It is unusual that William would allow the property to pass from his hands for the relatively small amount required to redeem it unless he felt "the certainty that the certificate was in the hands of a friend on whom he could rely." *Terry*, 107 N.W. at 306.[1] *See also Turner v. Edwards*, 207 Minn. 455, 292 N.W. 257, 259–60 (Minn. 1940) (noting as relevant factor in assessing collusive scheme that "amount required to redeem was considerably less than the value of the house" and "Edwards made no effort to secure funds with which to pay the taxes and prevent the acquisition of title by her daughter").

[¶ 15] A permissible inference which could be drawn from the evidence in this case is that Maria and William planned to have Maria purchase the tax sale certificates, rather than have William redeem the property, so they could acquire the property free of any interest of Reynolds and protect William's substantial investment in the property. This constitutes the use of the forms and proceedings of law to obtain an object forbidden by law, *Higgins*, 2001 ND 149, ¶ 21, 632 N.W.2d 463, and we conclude the trial court's finding of collusion is not clearly erroneous. Therefore, the trial court did not err in treating Maria's purchase of the tax sale certificates as a redemption by William, thereby resulting in William and Reynolds being co-owners of the property.

### III

[¶ 16] In their cross-appeal, Thilmony and Strandemo argue the original

---

1. The court in *Terry*, 107 N.W. at 306–07, after finding a collusive arrangement, further stated in dictum that a wife could not obtain a valid tax title against her husband or others to whom he owed a duty to pay the taxes. In *Higgins*, 2001 ND 149, ¶ 22, 632 N.W.2d 463, we rejected the "outdated" proposition that a purchase of tax sale certificates by the spouse of the property owner should be treated as a matter of law as a redemption by the owner. We adhere to that position in this case.

judgment quieting title in them alone should be reinstated because William, a named defendant in the quiet title action, did not appeal from that judgment. Thilmony and Strandemo's argument rests on the mistaken assumption that no one appealed from the original quiet title judgment.

[¶ 17] The quiet title action and the mandamus action were consolidated by the trial court under the parties' agreement. The record shows that Maria's notice of appeal in the prior appeal stated she was appealing from both the mandamus and quiet title actions. *See Higgins*, 2001 ND 149, ¶ 1, 632 N.W.2d 463. Although Maria was not specifically named a defendant in the quiet title action, the defendants in that action include "all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the complaint." Maria, Thilmony and Strandemo executed a stipulation of facts in the quiet title action and Maria filed a motion for summary judgment in the quiet title action. Consequently, Maria was an "unknown" person who claimed an interest in the property, she appeared in those proceedings, and she had standing to appeal from the judgment in the quiet title action. Thilmony and Strandemo's argument that the trial court's original quiet title judgment should be reinstated because William did not file an appeal is without merit.

## IV

[¶ 18] The judgment and amended judgment are affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.